## Louisville Taxicab & Transfer Co. v. Hill.

April 25, 1947.

. B. H. Farnsley, Judge.

Robert L. Page and Bert Van. Arsdale for appellant.

Edrington & Redmon, H. V. B. Denzer and H. C. Reid, Jr., for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Appellee, Norman R. Hill, sued the Louisville Taxicab & Transfer Company and Nellie J. O'Leary for $15,700 damages alleged to have been sustained by him in an automobile accident. The jury found in favor of

Mrs. O'Leary but against the Company in the sum of $5085 and it appeals. Only two grounds are argued for reversal of the judgment; (a) The verdict is excessive, and (b) incompetent evidence offered by appellant was excluded.

Hill, a man 33 years of age, was driver for the B Line Taxicab Company, but on the afternoon of the accident, January 26, 1945, he was off duty and sitting on the right front seat in one of the Company's cabs parked in front of the Republic Building on Walnut Street in Louisville. A Yellow Cab belonging to the Louisville Taxicab & Transfer Company pulled from the curb in front of the Watterson Hotel and started west on Walnut Street when it collided with a car being driven west on that street by Mrs. O'Leary. The collision caused the Yellow Cab to strike the rear of the B Line Cab, which knocked the right front wheel of the latter onto the sidewalk about two feet.

It was testified by Hill that the impact threw him to the floor of the B Line Cab and his left eye struck an instrument on the dashboard, his head was bumped, his neck was jerked and he was so stunned that he did not get out of the cab for some three minutes. The driver of the B Line Cab was in the Republic Building at the time of the accident but he returned within a few minutes, drove Hill to a place to get some cigarettes and then took him home where he laid on his bed suffering with his back, neck and a headache from the nervous shock of the accident.

Mrs. O'Leary and the drivers of the two cabs involved in the accident all testified that Hill did not appear to be hurt. Hill drove his cab the day following the accident. But after driving five hours on Jan. 28th, the second day following the accident, he felt so badly that he went home and remained in bed a few days and got a prescription from his family doctor. Sometime later (he did not recall the date), Hill started driving his cab again, but after a week he said he had to give it up on account of defective vision and has not worked since.

The record shows that Hill was inducted into the Navy in April 1944 and served until December of that year. During the seven or eight months he was in the

Navy, Hill was in the hospital some four months because of a nervous disorder, which resulted in his discharge in December with 10% disability. He had suffered a head injury as a child and there were five parallel scars on his head ranging in length from two to six inches, but Hill did not know what injury had made these scars.

It was testified by Hill that when he entered the Navy both his eyes tested 20/20 and that although he was discharged on account of his nervous condition, both of his eyes tested 20/20 when he was separated from the Navy.

Dr. Irvin C. Gousha, an optometrist of Louisville, testified that when he examined Hill on March 2, 1945, he had a slight retinal hemorrhage in the left eye, a bump on the back of his neck, was highly nervous and his vision was 20/50 in each eye. Lenses had no effect on his vision and Gousha referred him to his family physician. Without objection Dr. Gousha testified that the family physician diagnosed Hill's trouble as a result of his nervous condition. Gousha then sent Hill to another physician to have his head x-rayed, and those pictures were negative. Gousha saw Hill some four weeks later at which time the hemorrhage in the left eye had cleared up, but his eyes only tested 20/60.

Dr. C. W. Kelly, an eye specialist who was a witness for appellant, examined Hill on June 1, 1945, and his vision was 20/200, one-tenth of normal. But Dr. Kelly found nothing wrong with the fundus, or lens, of the eye and his testimony indicates that he thought the patient was malingering. Dr. Kelly gave it as his opinion that the accident had no effect upon Hill's alleged defective vision.

Dr. Ben Smock, a physician for the appellant, testified to the effect that he, nor anybody who had not seen Hill before the accident as well as after it, could say whether or not his condition had been aggravated as a result of the accident.

When Dr. Gousha was asked what in his opinion caused Hill's defective vision, he answered that Hill was highly nervous and while he had never seen the patient before he first examined him, he thought ''an

accident could agitate his condition and make it worse, and his vision could be down the way it is due to a highly nervous condition like he has.'' He was next asked whether or not in his opinion Hill's nervous condition had been aggravated or increased by the accident. He replied, he thought it had. But Dr. Gousha did not say how much the accident had aggravated Hill's nervous condition or how much it had affected his vision. Indeed, he could not so testify as he had not seen the patient before the accident. No other witness testified for Hill as to the effect of this accident upon the nervous system or upon his vision and it is apparent that Dr. Gousha's testimony is too vague and indefinfiite to sustain a judgment for $5085.

While the rule in this jurisdiction is that one may recover for an injury which develops a latent one, or aggravates an existing condition so as to increase the suffering or which may result in permanent injury, Louisville & N. R. Co. v. Kerrick, 178 Ky. 486, 199 S. W. 44, the defendant is not responsible to the plaintiff except to the extent, if any, his previous injury has been aggravated or extended by the accident. Louisville & N. R. Co. v. Parsons, 213 Ky. 432, 281 S. W. 519. See 15 Am. Jur. ,''Damages'' sec. 80, p. 488.

In the record before us there is nothing to show to what extent Hill's nervous condition was aggravated by this accident or to what extent the accident affected his vision. Where an award appears to be so disproportionate to the proven injury and its result as to strike the mind at first blush that the verdict was not reached through calm deliberation, but was the result of some undue influence, bias, passion or prejudice on the part of the jury, this court will reverse the judgment because of excessive damages. Pagliro v. Cleveland, 302 Ky. 306, 194 S. W. 2d 647 and authorities therein cited.

But little space need be devoted to the second ground assigned by appellant for reversal since that will not likely arise on another trial of the case. Mr. Page, appellant's attorney, testified without the hearing of the jury that a passenger in the Yellow Cab had been subpoenaed by both sides but the witness told him that he did not recall the accident, therefore Page did not compel the witness to appear in court. This was hear-

say on the part of Mr. Page and the court properly excluded his testimony.

The judgment is reversed for proceedings consistent with this opinion.