DR. S. J. POTTS, Plaintiff, v. JAMES E. HOWSER, t/a HOWSER BOAT COMPANY, Defendant and JACK R. HARRIS, Additional Defendant.

(Filed 14 June 1968.)

**1. Damages § 3—**

Where there is evidence from which the jury could find that plaintiff's diseased condition was active prior to the accident and that its severity was increased and aggravated as a result of defendant's negligence, defendant is liable only to the extent that his wrongful act proximately and naturally aggravated plaintiff's condition.

**2. Damages § 16—**

Evidence tending to show that the injuries received by plaintiff in the accident aggravated plaintiff's pre-existing infirmity of fibrositis is a substantial feature of the case, and the court should have instructed the jury as to the legal significance of defendant's negligent acts which aggravated the pre-existing condition, G.S. 1-180, a general instruction on the measure of damages being insufficient.

**3. Appeal and Error § 24—**

Exceptions relating to a single question of law are properly grouped under one assignment of error.

**4. Evidence §§ 33, 50—**

Testimony elicited from a witness other than the author of a medical report is incompetent as hearsay to prove the truth of the contents of the report.

**5. Same—**

Testimony elicited from a physician on cross-examination concerning the results of a radiologist's report *is held* competent when it appears that the physician was not reading the report before the jury but was merely stating that he had reviewed the report and had an opinion satisfactory to himself as to what it showed.

**6. Appeal and Error § 47—**

Error by the court in defendant's favor does not entitle plaintiff to similar benefits.

**7. Witness § 8—**

Plaintiff in a personal injury action, who had been married six times, could not be prejudiced by question on cross-examination as to whether he had complained to his fifth wife about tenseness in his wrist prior to the accident.

**8. Same—**

Cross-examination may not be used to take unfair advantage or to discredit a witness by questions tending merely to prejudice him in the eyes of the jury without a rational basis affecting his credibility.

**9. Same; Damages § 13—**

In an inquiry to determine damages for personal injuries sustained by plaintiff as a result of defendant's negligence in operating a motor boat, it is incompetent to ask the plaintiff on cross-examination if he got a Mexican divorce from his fifth wife while on a trip to that country shortly after the accident, or if he failed to report on his income tax return collections from delinquent accounts.

**10. Damages § 13—**

In an inquiry to determine damages for personal injuries sustained by plaintiff as a result of defendant's negligence in operating a motor boat,

it is competent to ask plaintiff on cross-examination (1) if he took a pleasure trip to Mexico shortly after the accident, (2) if he drank at all, (3) if plaintiff rented a fishing boat for eleven days immediately following the accident, (4) if plaintiff was involved in a subsequent accident which resulted in injury and disability, (5) if plaintiff suffered from a service-connected disability.

**11. Same—**

Evidence of pre-existing injuries, diseases or infirmities is competent in diminution of damages allegedly attributable to the injury in suit if such prior conditions bear a causal relation to the disabling injuries for which damages are sought.

**12. Evidence § 44—**

Testimony of plaintiff's former wife concerning plaintiff's physical condition and his complaints as to matters of health prior to an accident is competent.

**13. Judgments § 15—**

Plaintiff's right to recover at least nominal damages and costs on a judgment by default and inquiry is a substantive right, and it is incumbent upon the court to instruct the jury with reference thereto even in the absence of a special request.

**14. Same—**

On a determination of damages under a judgment by default and inquiry, the most the defendant can accomplish by his evidence on the inquiry is to reduce the recovery to nominal damages.

**15. Damages § 1—**

What is meant by nominal damages is a small trivial sum awarded in recognition of a technical injury which has caused no substantial damage.

APPEAL by plaintiff from *Gambill, J.,* at the 25 September 1967 Mixed Session, ALEXANDER Superior Court.

Civil action to recover damages for personal injuries sustained by reason of original defendant's alleged negligent operation of a motor boat.

This case was before the Court on a former appeal by the original defendant. It is reported in 267 N.C. 484, 148 S.E. 2d 836. As a result of that appeal the additional defendant Jack R. Harris was eliminated as a party; judgment by default and inquiry against original defendant James E. Howser was upheld; and the case was returned to the Superior Court of Alexander County for inquiry before a jury on the issue of damages.

At the 25 September 1967 Mixed Session a jury was duly empaneled to make the inquiry.

Plaintiff testified that he practiced dentistry in Taylorsville, Alexander County, for ten years, returning to his home county of Columbus in 1964, where he has since followed his profession.

He stated that on April 11, 1962, at about 7:15 p.m., he was injured in a boat accident just off Taylorsville Beach when defendant's cabin cruiser struck his boat, knocking him into the water. He came

up under the cabin cruiser twice trying to surface. His hand hit the propellor or some part of the boat. His left wrist, little finger on left hand, and his neck were injured. He went to Alexander County Hospital the following morning and saw Dr. Alex Moffett, the chief resident surgeon. He was sore, bruised, and had a pain in his neck and left wrist.

After treatment for several months by Dr. Moffett, he went to Miller Clinic in Charlotte and saw Dr. Jacobs who treated him "off and on" for two years. The pain continued in his right shoulder and radiated down the right side of his back and "of course into my hands too." Since that time he has had a limited motion in his neck when turning his head to the right. He had no such limitation prior to the accident.

At the time of his injury his earnings averaged $75 to $100 per day for five and a half days per week. He lost full time for four months and half time for twelve to eighteen months, all due to pain in his neck and back and, at times, a limitation of motion in the little finger of his left hand.

He spent $1,221.50 for medicine and drugs and was still under the care of a doctor at the time of the trial.

On cross examination, plaintiff admitted over objection that he was drawing a disability benefit of $21 per month from the U. S. Air Force for a "suspected stomach ulcer"; that prior to the boat accident he consulted Dr. Jacobs "to find out what was wrong with my hands." He stated that he had experienced trouble with his right wrist since 1955 and that Dr. Moffett had x-rayed his spine or wrist several years ago.

Plaintiff further admitted that he rented a boat and motor for fishing purposes for eleven days immediately following the accident in suit, using a rod and reel on those occasions.

Over objection, plaintiff said he spent ten days in Acapulco, Mexico, following this accident because Dr. Jacobs thought he could recuperate better in the sunshine.

Plaintiff was also cross examined, over objection, concerning a rear-end auto collision near Wilmington some time following the boat accident and stated that he authorized Dr. Floyd to render a medical report.

Dr. Alex Moffett testified that plaintiff came to his office on April 12, 1962, and made a statement to his secretary, who x-rayed plaintiff. The history given was that of an accident "while fishing in my boat . . . I was rammed broadside and knocked from my boat into the lake . . . and sustained injuries to left wrist and ring finger and upon arising this morning felt as if was developing a cold and had soreness in wrist."

Dr. Moffett personally saw plaintiff on May 28, 1962. At that time plaintiff stated that ever since his accident on April 11 he had felt a burning type pain in the left shoulder blade region and in the mornings he had pain lower down in his back on the right side. "He told me his left wrist and ring finger had recovered completely. . . ." Dr. Moffett continued, "In reviewing his past history he has had pain . . . thought to be due to a cervical disc disease. That's a disc disease in the neck. On one occasion, he had tenosynovitis, that's a type of rheumatism in his wrist, and I stated that I believe that this man has a tendency toward fibrositis and that the accident, with the exposure to cold water and possibly also with muscular skeletal strain, predisposed to his present fibrositis. Fibrositis is a general term that we use to cover pain in the muscles and about the joints, and it covers such things as a crick in the neck and lumbago and a catch in the back. In this case, since he was still having this pain in his back, I thought that this was another flare-up of rheumatism in and about the muscles and I thought it had been aggravated by his accident. . . . The next time I saw him professionally was January 17, 1963, at which time he was having pain in his neck, right hip and right wrist. Dr. Jacobs was treating him at the time and he came by my office after having had a treatment from Dr. Jacobs that same day. He was having a good deal of pain at the time in the wrist. I put a splint on his wrist and advised him to rest and elevate his wrist and continue the treatment that Dr. Jacobs had prescribed. . . . I thought that this was another flare-up of his fibrositis and also connected with this condition in his neck. I believe they frequently go together. I have an opinion satisfactory to myself that the injuries that I have just described could cause some permanent effects."

Dr. Moffett further stated, in answer to a hypothetical question on cross examination, that being immersed in cold water might have produced the conditions which he found on the May 28 examination of the plaintiff; or, the findings on that date could have been a normal flare-up of his condition prior to the accident.

Defendant's evidence: Cromer Spencer testified that he saw the accident; that plaintiff was in the water three or four minutes; that plaintiff came to the shore on defendant's boat, put on dry clothes, and stayed at Spencer's house for a period of thirty minutes to two hours during which time he made no complaints about being hurt; that the water temperature was 50 or 60 degrees. This witness further testified that plaintiff rented a boat from him while his own was being repaired and continued to fish during the days immediately following the accident.

Mary Helen Marshall testified that she worked for the plaintiff

as a dental assistant for four years before her marriage to him and four years afterwards; that he complained of his wrists, shoulder and back before and after the accident; that he saw various doctors about his ailments; that his complaints before and after the accident were about the same; that on the night of the accident she took him dry clothes to put on and doesn't recall any complaints of pain at that time; that plaintiff divorced her.

Defendant James Howser testified that after the accident he brought plaintiff ashore and saw him an hour later at the boat house; that plaintiff made no mention of being hurt.

Following the charge, the case was submitted to the jury upon the following issue which was answered as shown:

"1.   What amount, if any, is the plaintiff entitled to recover of the defendant? Answer: None."

Judgment was signed accordingly, and plaintiff appealed.

*McElwee & Hall by Jerone C. Herring and John E. Hall, Attorneys for plaintiff appellant.*

*Smathers & Hufstader by James C. Smathers; Larry W. Pitts, Attorneys for defendant appellee.*

Huskins, J.   Plaintiff preserves four assignments, to wit: (1) the court erred in failing to instruct the jury concerning plaintiff's right to recover damages for aggravation of a pre-existing physical condition; (2) the court erred in admitting hearsay evidence of a medical report by a doctor not present in court; (3) the court erred in admitting prejudicial evidence which was irrelevant and immaterial, to wit: (a) evidence of plaintiff's bad character, (b) evidence relating to negligence, (c) evidence of a subsequent accident, and (d) remote medical evidence; and (4) the court erred in failing to enter judgment in favor of plaintiff for at least nominal damages and court costs. These assignments will be discussed in that order. All other assignments are deemed abandoned under Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 810.

"The general rule is that where the result of the accident is to bring into activity a dormant or incipient disease, or one to which the injured person is predisposed, the defendant is liable for the entire damages which ensue, for it cannot be said that the development of the disease as a result of the injury was not the consequence which might naturally or ordinarily follow as a result of the injury, and therefore, the negligent person may be held liable therefor." 22 Am. Jur. 2d, Damages § 123. In *Lockwood v. McCaskill*, 262 N.C. 663, 670, 138 S.E. 2d 541, 546, it was held that if defendant's misconduct "amounted to a breach of duty to a person of ordinary susceptibility,

he is liable for all damages suffered by plaintiff notwithstanding the fact that these damages were unusually extensive because of peculiar susceptibility."

All the evidence· tends to show that Dr. Potts was suffering from a pre-existing condition (variously described as fibrositis, arthritis, tenosynovitis and rheumatism), which was not activated from a dormant state by the accident. Rather, there is evidence from which the jury could find that plaintiff's diseased condition was active prior to the accident, and its severity was increased and aggravated as a result of defendant's negligence. This calls for application of legal principles aptly stated in 25 C.J.S., Damages § 21, p. 661, as follows:

> "On the other hand, where the wrongful act does not cause a diseased condition but only aggravates and increases the severity of a condition existing at the time of the injury, the injured person may recover only for such increased or augmented sufferings as are the natural and proximate result of the wrongful act, or, as otherwise stated, where a pre-existing disease is aggravated by the wrongful act of another person, the victim's recovery in damages is limited to the additional injury caused by the aggravation over and above the consequences, which the pre-existing disease, running its normal course, would itself have caused if there had been no aggravation by the wrongful injury."

An injured person is entitled to recover all damages proximately caused by the defendant's negligence. Even so, when his injuries are aggravated or activated by a pre-existing physical or mental condition, defendant is liable only to the extent that his wrongful act proximately and naturally aggravated or activated plaintiff's condition. "The defendant is not liable for damages . . . attributable solely to the original condition." 22 Am. Jur. 2d, Damages § 124. Plaintiff is confined to those damages due to its enhancement or aggravation. *Louisville Taxi Cab and Transfer Co. v. Hill,* 304 Ky. 565, 201 S.W. 2d 731; *Sterrett v. East Texas Motor Freight Lines,* 150 Tex. 12, 236 S.W. 2d 776. Compare *Anderson v. Motor Co.,* 233 N.C. 372, 64 S.E. 2d 265.

It was held in *Mourison v. Hansen,* 128 Conn. 62, 20 A. 2d 84, 136 A.L.R. 413, that one injured by the negligence of another is entitled to full compensation for all damage proximately resulting from the negligence, "even though the injuries are more serious than they would otherwise have been because of a pre-existing arthritic condition." Plaintiff "was entitled to damages to the extent that the jury found her condition was so aggravated by the defendant's wrongful act."

In the case before us, the court twice made reference in the charge to plaintiff's pre-existing condition, each time in the form of a contention as follows:

"Now, the defendant argues and contends otherwise. He argues and contends that this plaintiff had certain conditions, pre-existing conditions, and that he had not suffered any substantial injury, if any, to his person because of this collision, that he may have been thrown into the water, and that if there is any damage, it would be damage to his pre-existing condition, and that he did not suffer any substantial injury or damage because of the negligence on the part of the defendant."

Again, "Now, the defendant argues and contends otherwise. He argues and contends that the plaintiff was not hurt on this occasion, that mostly he was thrown out into the water and that if he was suffering any injuries, that it was a re-occurrence or flare-up of the pre-existing condition and that that was not a substantial injury or damage to this plaintiff."

In each instance the court was stating contentions of the defendant following a statement of plaintiff's contentions. No instruction of law was given with reference to these contentions, and the inference is left that if the jury should find that plaintiff's pain and suffering, loss of earnings and medical expenses were attributable to a pre-existing disease or infirmity plaintiff could not recover. The legal significance of negligent acts on the part of the defendant which aggravated or accelerated a pre-existing condition was not explained. This was a substantive feature of the controversy and it was incumbent upon the court to instruct the jury with reference to it even in the absence of a specific request. G.S. 1-180. It was so held in *Harris v. Greyhound Corp.*, 243 N.C. 346, 90 S.E. 2d 710. See also *Saunders v. Warren*, 267 N.C. 735, 149 S.E. 2d 19; *Westmoreland v. Gregory*, 255 N.C. 172, 120 S.E. 2d 523; *Byrnes v. Ryck*, 254 N.C. 496, 119 S.E. 2d 391; *Whiteside v. McCarson*, 250 N.C. 673, 110 S.E. 2d 295; *Glenn v. Raleigh*, 246 N.C. 469, 98 S.E. 2d 913; *Lewis v. Watson*, 229 N.C. 20, 47 S.E. 2d 484. The court's general instruction on the measure of damages was insufficient to satisfy this requirement. Plaintiff's first assignment of error must therefore be sustained.

Plaintiff's second assignment of error is based on alleged violations of the Hearsay Rule. The following cross examination of plaintiff concerning a medical report by Dr. Floyd was permitted over objection:

"Q.   And I'll ask you if it didn't contain this: Under paragraph One-A, entitled: 'Diagnosis and Concurrent Conditions' — I'll ask you if it didn't contain this statement: 'Multiple

contusions, left arm, left shoulder and upper back and neck from auto accident'?

"A.   That's right.

"Q.   And I'll ask you if it didn't contain this statement, in answer to paragraph six, subsection B, 'If Yes, estimated date of termination and cost of further treatment'? The date was given as '15 November 1966'?

"A.   That's right."

Dr. Floyd was not in court and did not testify. The foregoing represents plaintiff's Exceptions Nos. 18, 19 and 20.

Dr. Alex Moffett, a witness for plaintiff, was cross examined over plaintiff's objection in the following fashion:

"Q.   Did you get a radiologist's report on that?

"A.   Yes, sir.

"Q.   Do you have it with you?

"A.   Yes.

"Q.   Have you reviewed it yesterday or this morning?

"A.   Yes, I have.

"Q.   Did you look at the x-rays?

"A.   Yes, I did.

"Q.   Do you have an opinion satisfactory to yourself as to what they showed? Objection. Overruled.

"A.   They did not show any evidence or pattern of joint change except for one change that the radiologist noted that he apparently did not consider of any importance."

This is plaintiff's Exception No. 31.

Plaintiff attempted to offer in his own behalf a letter written by Dr. Jacobs of the Miller Clinic in Charlotte to the plaintiff purporting to show that Dr. Jacobs advised plaintiff he could recuperate better in New Mexico, Arizona or Mexico because of the sunshine. Defendant's objection was sustained, and this constitutes plaintiff's Exception No. 24.

Plaintiff's exceptions to the admission and exclusion of the foregoing testimony are grouped under one assignment of error, and properly so, since they all relate to a single question of law; namely, whether such evidence violated the Hearsay Rule and was therefore incompetent. *Dobias v. White*, 240 N.C. 680, 83 S.E. 2d 785.

"Evidence, oral or written, is called hearsay when its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness by whom it is sought to produce it." *King v. Bynum*, 137 N.C. 491, 495, 49 S.E. 955, 956; quoted with approval in *Chandler v. Jones*, 173 N.C. 427, 92 S.E. 145. "Expressed differently, whenever the assertion of any person,

other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay." Stansbury, N. C. Evidence, Hearsay, § 138.

Defendant's cross examination of plaintiff concerning Dr. Floyd's medical report was for the purpose of showing that plaintiff had been injured and disabled in the Wilmington accident and could not claim damages against defendant for that period of disability. Defendant was not merely seeking to establish the fact that Dr. Floyd rendered a medical report. Rather, he was seeking to establish the *truth* of what the report *said* and was placing its contents before the jury without introducing it. He was doing indirectly what he could not do directly. The medical report itself was clearly hearsay. Dr. Floyd was not in court and subject to cross examination. It therefore follows that plaintiff's Exceptions Nos. 18, 19 and 20 should have been sustained.

The cross examination of Dr. Moffett concerning the report of the radiologist is competent. It does not appear that Dr. Moffett was merely reading the report before the jury. Rather, he stated that he had reviewed the report himself and had an opinion satisfactory to himself as to what it showed. Nothing affecting his competency to testify about it appears in the record. Exception No. 31 is overruled.

Plaintiff is in no position to insist on his Exception No. 24 for the simple reason that error by the court in defendant's favor does not entitle plaintiff to similar benefits.

Over objection, defendant was permitted to question plaintiff as follows:

"Q. As a matter of fact, your fifth wife was employed in your office at the time this accident occurred, and you complained to her about it [tense wrists], didn't you?

"A. I don't recall. My wife had no routine or anything as to massaging my neck and the upper part of my back and my wrist prior to this accident. She did it every now and then; I think everyone does. It was because I bent over in such a position that my back and neck hurt and that's the reason she massaged it.

[Plaintiff's Exception No. 6.]

"Q. How long did you stay in Mexico?
"A. Ten days or two weeks.

"Q. And while you were there, you filed for a Mexican divorce from your fifth wife?
"A. I did not.

"Q. Your wife was served with papers from a Mexican court, wasn't she?

[No answer.]

"Q. And you got a Mexican divorce, didn't you?

[No answer.]

"Q. You got a Mexican divorce, did you, Doctor, from this Miss Mary Helen Marshall?

"A. Not at the time. It had nothing to do with that trip. It was years later that I got that divorce. I got a Mexican divorce, and it was not at Acapulco. It was not during that time. It was not.

[Plaintiff's Exception's Nos. 13, 14 and 15.]

"Q. Do you drink at all?

"A. I never have drank enough to affect my work. I've never drank to affect my work."

[Plaintiff's Exception No. 21A.]

After plaintiff testified he filed income tax returns with reference to his earnings, he was asked:

"Q. Then I'll ask you if, after the filing of the income tax return, or after you had taken credit for bad debts on the books, when somebody did happen to come by and pay you, you stuck the money in your pocket, didn't you?

"A. Not to my knowledge."

[Plaintiff's Exception No. 16.]

Mary Helen Marshall, testifying on direct examination as a defense witness, was asked over plaintiff's objection:

"Q. What about his bad accounts?

"A. Well, he usually turned them over to a credit bureau or whatever you want to call it, or collection agency.

"Q. What about people — did you keep a list of what he called his bad accounts?

"A. Well, there was a list there in the office. He usually had an accountant to fill out the things and when the taxes were — yearly taxes were fixed, I just signed them and I didn't know what was what."

[Plaintiff's Exceptions Nos. 39 and 40.]

Plaintiff contends the foregoing exceptions, which are grouped for discussion in the brief under his third assignment of error, were irrelevant and immaterial to the issue being tried, were intended as evidence of his bad character, and were very prejudicial.

The question and answer embraced in Exception No. 6 was harmless. Plaintiff was asked on cross examination if he had not com-

plained about tenseness in his wrists. to his fifth wife who was employed in his office prior to the accident in suit. The question identifies the wife to which the complaints were allegedly made. Obviously, a man who has had six wives could not be asked if he complained to his wife. The question would be too vague and indefinite.

Exceptions Nos. 13, 14 and 15 relate to plaintiff's trip to Mexico shortly after the accident and whether he got a Mexican divorce while there. It is entirely proper for defendant to show, if he can, that plaintiff was not so severely injured that he could not make a pleasure trip to Mexico shortly after the accident. Even so, notwithstanding the wide range permissible, "cross-examination for purposes of impeachment must stay within reason, and cannot be used to bring out purely prejudicial matters. . . ." Stansbury, N. C. Evidence, Witnesses § 42. Cross examination may not be used to take unfair advantage nor to discredit a witness by questions "tending merely to prejudice him in the eyes of the jury without rational basis as affecting his credibility." *Foxman v. Hanes*, 218 N.C. 722, 725, 12 S.E. 2d 258, 260. We think the questions concerning the Mexican divorce come within this category as do those questions concerning plaintiff's income tax returns and method of handling his delinquent accounts. The inquiry about plaintiff's drinking habits was permissible as bearing upon the cause of his alleged loss of earnings.

Exceptions Nos. 39 and 40 are sustained for the reason that plaintiff's handling of his bad accounts, even if a proper subject for cross examination of plaintiff, is a collateral matter. His answer was conclusive and cannot be contradicted by other testimony. *State v. Brown*, 266 N.C. 55, 145 S.E. 2d 297, and cases there cited.

Defendant was permitted to elicit from plaintiff on cross examination an admission that plaintiff rented a fishing boat for eleven days immediately following the accident. Plaintiff's Exceptions Nos. 9, 10 and 11 assigned this as error for the reason that property damage was not included in plaintiff's suit. These exceptions are without merit and are overruled. The stated purpose of the evidence was to show lack of injury and to show that plaintiff was able to carry on his usual fishing pursuits.

Plaintiff's Exceptions Nos. 36 and 37 are addressed to the action of the court in permitting defendant to elicit from his witness Cromer Spencer testimony to the effect that defendant's boat was traveling at a speed of 3, 4, 5 or 10 miles per hour. "Couldn't have been over ten." Again, this evidence was not offered to show lack of negligence but as bearing upon the lack of force upon impact and to minimize the injuries likely to ensue therefrom. Its admission was harmless and plaintiff's exceptions are overruled.

Plaintiff excepts to the admission of evidence concerning a subsequent accident in which plaintiff was involved, contending it was improper to admit evidence of a rear-end auto collision on the highway near Wilmington because it was in no way similar to the boating accident and because there was no competent evidence that the injuries plaintiff received as a result of the collision related in any way to the injuries received in the case at bar. This is plaintiff's Exception No. 17.

In view of plaintiff's contention that he has sustained permanent injuries from the boating accident, defendant may show by competent evidence, if he can, that plaintiff was involved in a subsequent accident resulting in injury and disability. Defendant may further show the nature and extent of such injury and disability by the testimony or deposition of Dr. Floyd or by any other competent evidence. Plaintiff's Exception No. 17 is well taken on the present record because no competent medical evidence was offered to show what injuries plaintiff sustained in the Wilmington accident or what disabilities he suffered by reason thereof. Defendant will have an opportunity to mend his licks at the next trial.

Plaintiff's Exceptions Nos. 1, 2, 3, 4, 7, 8, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35 and 38 relate to medical evidence, some allegedly too remote, some too conjectural, and some rendered by a non-expert. These exceptions are all overruled. Evidence of pre-existing injuries, diseases or infirmities is competent in diminution of damages allegedly attributable to the injury in suit if such prior conditions bear a causal relation to the disabling injuries for which damages are sought. Plaintiff's medical evidence, and his own testimony as well, tends to show a history of pain due to arthritis, rheumatism, tenosynovitis and fibrositis. His complaints since the boat accident relate to pain in his fingers, wrists, shoulder, neck and back — conditions which could result from arthritis, rheumatism, tenosynovitis or fibrositis. Furthermore, the testimony of plaintiff's former wife concerning his physical condition and complaints prior to the accident was competent. "A nonexpert witness may testify from his knowledge and observation of the physical condition of a person as to such person's ability to engage in work or follow a gainful occupation. Such witness may also testify as to a person's health, including an opinion about his present state of health and ability to work." 3 Strong's N. C. Index 2d, Evidence § 44. See also *Gasque v. Asheville;* 207 N.C. 821, 178 S.E. 848.

Defendant was entitled to cross examine plaintiff concerning a disability benefit of $21 monthly received by plaintiff from the U. S. Air Force on account of a service-connected disability to ascertain the nature of such disability and whether or not it contributed

to his alleged disabilities for which damages are sought in this case.

We consider next the effect of a judgment by default and inquiry. "A judgment by default and inquiry is an interlocutory judgment which transfers the cause by operation of law to the Superior Court for further hearing in term. It has been held that a judgment by default and inquiry determines the right of plaintiff to recover at least nominal damages and costs and precludes defendant from offering evidence on the inquiry to show that plaintiff has no right of action." 5 Strong's N. C. Index 2d, Judgments § 15. See also *Rich v. Railroad,* 244 N.C. 175, 92 S.E. 2d 768; *DeHoff v. Black,* 206 N.C. 687, 175 S.E. 179.

The most defendant can accomplish by his evidence on the inquiry is to reduce the recovery to nominal damages. *Garrard v. Dollar,* 49 N.C. 175. This rule was recognized in this case on a former appeal [*Potts v. Howser,* 267 N.C. 484, 494, 148 S.E. 2d 836, 844] where Parker, C.J., speaking for the Court, said:

> "It is true that defendant's answer has been stricken, and that plaintiff's cause of action and right to recover at least nominal damages have been established. However, defendant is entitled to a trial on inquiry before a jury on the issue of damages. G.S. 1-212; *Wilson v. Chandler,* 238 N.C. 401, 78 S.E. 2d 155. In the trial of the question of damages, the defaulting defendant has the right to be heard and participate. He may, if he can, reduce the amount of damages to nominal damages. 30A Am. Jur., Judgments, § 219."

"Nominal damages, consisting of some trifling amount, are those recoverable where some legal right has been invaded but no actual loss or substantial injury has been sustained. Nominal damages are awarded in recognition of the right and of the technical injury resulting from its violation. They have been described as 'a peg on which to hang the costs.' *Hutton v. Cook,* 173 N.C. 496, 92 S.E. 355; 15 Am. Jur. 390. 'What is meant by nominal damages is a small trivial sum awarded in recognition of a technical injury which has caused no substantial damage.' " *Hairston v. Greyhound Corp.,* 220 N.C. 642, 644, 18 S.E. 2d 166, 168.

Plaintiff's right to recover at least nominal damages and costs was a substantive right and it was incumbent upon the court to instruct the jury with reference to it even in the absence of a special request. The jury's verdict was reached under a misapprehension of the law.

Plaintiff is entitled to a
New trial.