LEE CYCLE CENTER, INC. D/B/A WILSON CYCLE CENTER, AND LEE MOTOR COMPANY, INC., PLAINTIFFS v. WILSON CYCLE CENTER, INC., D/B/A CAROLINA MOTORSPORTS, MARK L. ELLIS, DANIEL ELLIS, AND CAROLINA MOTORSPORTS OF WILSON, INC., DEFENDANTS

No. COA00-382

(Filed 17 April 2001)

**1. Pleadings— amending complaint to include additional plaintiff—motion to dismiss—breach of contract**

The trial court did not abuse its discretion in a breach of contract action by allowing plaintiff Lee Cycle to amend its complaint to include Lee Motor as a plaintiff and by denying defendants' motion to dismiss for failure to state a claim, because: (1) plaintiff's failure to initially name Lee Motor as a plaintiff did not result in a lack of subject matter jurisdiction; and (2) plaintiffs were permitted to bring a breach of contract action since they have sufficiently alleged they were in privity of contract with defendants.

**2. Contracts— breach—findings of fact—conclusions of law**

The trial court did not err in a breach of contract action by its findings of fact and conclusions of law that defendants breached the agreement and damaged plaintiffs, because: (1) defendants continued to use the name "Wilson Cycle Center" in violation of the agreement; (2) defendants continued to advertise they sold motorcycles and watercraft in their Wilson store in violation of the agreement; and (3) defendants led plaintiffs to

1

believe they were delivering a pre-sold watercraft to one customer when defendants instead later sold it to a new customer for approximately $1,000.00 over what they indicated the first customer would be paying.

**3. Contracts— breach—motion for judgment notwithstanding the verdict—sufficiency of evidence**

The trial court did not err in a breach of contract action by denying defendants' motion for judgment notwithstanding the verdict, because plaintiffs presented substantial evidence that: (1) a contract existed between plaintiff Lee Motor and defendants, and plaintiff Lee Cycle was permitted to sue on this contract based on privity; and (2) defendants breached the agreement by using the name "Wilson Cycle Center," by advertising the sale of motorcycles and watercraft within the prohibited area, and by breaching the verbal agreement.

**4. Contracts— breach—motion for new trial—sufficiency of evidence**

The trial court did not abuse its discretion in a breach of contract action by denying defendants' motion for a new trial when the trial court did not commit any errors of law and plaintiffs presented substantial evidence that defendants breached the agreement.

**5. Costs— attorney fees—breach of contract action—no statutory basis**

The trial court erred in a breach of contract action by awarding plaintiffs attorney fees even though the parties drafted a contractual provision in their agreement providing that the breaching party pay attorney fees in the event the non-breaching party brings suit to enforce the agreement, because there is no express statutory authority permitting the award of attorney fees in breach of contract cases.

Judge TYSON concurring in part and dissenting in part.

Appeal by defendants from judgment dated 27 September 1999 by Judge James E. Ragan, III in Wilson County Superior Court. Heard in the Court of Appeals 30 January 2001.

LEE CYCLE CTR., INC. v. WILSON CYCLE CTR., INC.

[143 N.C. App. 1 (2001)]

*Farris and Farris, P.A., by Robert A. Farris, Jr. and Caroline F. Quinn, for plaintiff-appellees.*

*Narron & Holdford, P.A., by I. Joe Ivey, for defendant-appellants.*

GREENE, Judge.

Wilson Cycle Center, Inc. (Wilson Cycle), d/b/a Carolina Motorsports, and Carolina Motorsports of Wilson, Inc. (collectively, Defendants) appeal a judgment dated 27 September 1999 awarding damages to Lee Cycle Center, Inc., (Lee Cycle) d/b/a Wilson Cycle Center (WCC), and Lee Motor Company, Inc. (Lee Motor) (collectively, Plaintiffs).[1]

Lee Cycle filed a complaint against Defendants alleging Defendants breached an October 1994 asset purchase agreement between Defendants and Lee Cycle (the agreement). Defendants filed an answer denying most of Lee Cycle's allegations, however, admitting it had entered into the agreement with Lee Cycle. On 19 March 1998, Lee Cycle filed a motion to amend its complaint to allow Lee Motor to intervene in the action. On 23 March 1998, Defendants filed a motion to dismiss Plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6). The trial court, however, allowed Lee Cycle to amend its complaint and denied Defendants' motions, allowing Defendants thirty days to file responsive pleadings. Lee Cycle amended its complaint adding Lee Motor as a plaintiff and further alleged: John F. Lee (Lee) is the president and sole shareholder of Plaintiffs; Lee signed the agreement and promissory note on behalf of Lee Cycle; and Lee Cycle performed all the obligations to Defendants and received all the benefits from Defendants.

In a non-jury trial, Plaintiffs presented evidence that in October 1994, Lee, on behalf of Lee Motor, entered into the agreement with Wilson Cycle. Lee testified the agreement was entered into on behalf of Lee Motor because Lee Cycle was not incorporated at the time of the agreement. The agreement provided Lee Motor would pay $187,500.00 "plus the cost of the new motorcycle[,] ATV[,] personal watercraft[,] Yamaha generator and lawnmower inventory" to Wilson Cycle for:

---

1. We note Plaintiffs also filed suit against Mark L. Ellis (M. Ellis) and Daniel Ellis (D. Ellis), individually, however, the trial court dismissed Plaintiffs' action as to M. Ellis and D. Ellis.

(a) The trade name, "Wilson Cycle Center" or any similar sounding derivative thereof; and

(b) All new motorcycles; "all terrain vehicles" (Hereinafter "ATVs"): personal watercraft; Yamaha generators and lawnmowers; all new accessories and parts, as defined herein; any noncurrent parts and accessories, as defined herein (any used inventory is specifically excluded under this Agreement); and

. . . .

(d) Any used motorcycles, personal watercraft, ATV[]s, new or used mopeds as agreed upon between the parties . . . .

Wilson Cycle further agreed that Wilson Cycle, along with M. Ellis and D. Ellis, would not

directly or indirectly own, manage, operate, control, be employed by or be connected with, in any manner, with any new motorcycle or new personal watercraft sales dealer within a thirty-five (35) mile radius of the present location of [Wilson Cycle's] principal place of business for a period of five years.

The agreement also purported to "bind and inure to the benefit of the parties . . . and their respective heirs, successors and assigns." The parties also included an attorney's fees provision in the agreement obligating the breaching party pay "all costs, attorney[']s[] fees or other expenses arising out of any suit or action brought to enforce any rights conferred" under the agreement.

In January 1995, the parties finalized the agreement. On behalf of Lee Cycle, Lee executed a check as down payment on the agreement in the amount of $80,290.73 and signed a promissory note (the promissory note) for the remaining debt owed on the agreement to be paid in sixty monthly installments beginning 20 February 1996. On 22 March 1995, Plaintiffs contacted Defendants concerning Defendants' display of a sign with the name "Wilson Cycle Center" printed on it and a sign advertising Yamaha products for sale. After "several months" and "[s]everal repeated requests," Defendants removed the sign advertising Yamaha products.

In May 1995, Defendants contacted Plaintiffs about certain orders Defendants made prior to the agreement in which Defendants

had taken deposits on personal watercraft prior to receiving the personal watercraft from Sea-Doo. And, [Plaintiffs] made an

agreement with [Defendants] (the verbal agreement), that [Defendants] could bring their customers that they had deposits from to [Plaintiffs'] store and [Plaintiffs] would deliver the units for them. But, [Defendants] would get the profits from the sale because [Defendants] had presold the units.

As it turned out, . . . [Defendants] would come and get the units without bringing the customers, and for whatever various reasons, the customer was never available to come get the personal watercraft when [Defendants] would come and get it. And, [Plaintiffs], in good faith, agreed to let [Defendants] carry the personal watercrafts [Defendants] had deposits on, assuming that [Defendants] were selling [the watercrafts] to the people that [Defendants] had told [Plaintiffs] [Defendants] had deposits from.

Plaintiffs were told a particular watercraft was being sold to Richard Hurst (Hurst), and in fact, the same watercraft, with the same vehicle identification number, was sold to Jerry Temple (Temple) in Wilson on 4 June 1995. Defendants sold the watercraft to Temple for $6,201.00 after Plaintiffs believed they were selling it to Hurst for $4,666.50. Defendants also continued to use the trade name "Wilson Cycle Center" on receipts, business envelopes, and billing statements as late as June 1995. On 7 August 1995, Defendants officially changed the corporate name of Wilson Cycle Center, Inc. to Carolina Motorsports of Wilson, Inc.

In or about March 1996, Defendants opened a Carolina Motorsports in Kinston, located outside the geographic boundary established in the agreement, selling new and used motorcycles, personal watercraft, ATVs, boats, and other recreational vehicles. Defendants, however, continued to advertise Carolina Motorsports in Wilson as buying and selling motorcycles, without making any distinction as to whether the motorcycles were new or used.

In February 1997, Plaintiffs hired Ed Stutzman (Stutzman) of Invisible Audit to make a purchase from Carolina Motorsports in Wilson. Stutzman went to Carolina Motorsports in Wilson, "less than two miles from [WCC]." Stutzman asked M. Ellis if Defendants had any "new Yamaha[]s for sale" and M. Ellis informed him that Defendants "had a new one in the back which was being sent to [their] Kinston store." M. Ellis showed Stutzman a Yamaha Timberwolf all terrain vehicle and told Stutzman he was running a special on it for $3,750.00. Stutzman gave M. Ellis a deposit and M.

LEE CYCLE CTR., INC. v. WILSON CYCLE CTR., INC.

[143 N.C. App. 1 (2001)]

Ellis informed Stutzman that he would have to deliver the vehicle to Stutzman in Greenville because Carolina Motorsports in Wilson had "sold out," and, thus, "the paper work for the (new) Timberwolf would have to be written up at the Kinston store." M. Ellis wrote Stutzman a receipt for the deposit and "proceeded to cross out the name, address and phone number at the top of the receipt which read[] 'Wilson Cycle Center, Inc., P.O. Box 4445, 237-7076, Wilson, NC 27893' with a permanent black marker." M. Ellis "then stamped in red ink 'Carolina Motorsports' under the name, address and phone number he had crossed out. He then wrote Kinston in black ink to the right of the Carolina Motorsports stamp." Later that day, Stutzman went back to Carolina Motorsports in Wilson and paid the rest of the purchase price for the Timberwolf. M. Ellis wrote Stutzman a receipt and again marked through the business name, address, and telephone number and wrote in "Carolina Motorsports Kinston, NC." M. Ellis, however, told Stutzman he could not take delivery of the vehicle at the Wilson store and instead allowed Stutzman to take delivery of the Timberwolf 17.4 miles from Carolina Motorsports in Wilson. A week later, Stutzman received an invoice and training certificate from Defendants' Kinston store.

At the close of Plaintiffs' evidence and the close of all the evidence, Defendants renewed their 12(b)(6) motion alleging Plaintiffs failed to state a cause of action based on a lack of standing or subject matter jurisdiction and made motions for directed verdict. The trial court denied Defendants' motions. On 15 September 1999, Plaintiffs' attorney submitted an affidavit stating he had expended about 129 hours on this case and "[b]ased on the time, effort and expertise required in connection with this matter, it is [his] belief that a fee in the amount of $30,000.00 would be fair and reasonable, plus costs." The trial court found as fact:

> that Plaintiff Lee Motor . . . entered into the Purchase Agreement with [WCC] . . . ; that . . . Lee Cycle . . . was and is the beneficiary and Obligor of the Promissory Note supporting [the] [a]greement . . . .
>
> . . . .
>
> . . . [I]n addition to the . . . [a]greement, the parties entered into [the] verbal agreement whereby Plaintiff[s] [were] to deliver to Defendant[s] certain pre-sold Sea Doo personal water craft to allow Defendant[s] to consumate said sales and Plaintiff[s] did in fact deliver to Defendant[s] a 1995 Sea Doo bearing serial number

ZZNA4015L495 on or about May 6, 1995, for sale to . . . Hurst; but that. Defendant[s], instead sold said vehicle to . . . Temple on or about June 4, 1995, at a profit of $1,000.00; and that

Fifth, Defendants have further breached the . . . agreement with Plaintiffs as follows:

(a) Defendants continue to use the name "Wilson Cycle Center";

(b) Defendants competed with Plaintiff[s] in violation of the covenant not to compete, particularly maintaining a business within thirty-five (35) miles of Defendants location on Highway 301 North of Wilson, North Carolina, which was, for all intents and purposes an extension of the Kinston location of the business . . . .

(1) New parts were kept and sold in the Wilson store;

(2) A new motorcycle (Big Dog) was delivered to the Wilson store and kept on premises;

(3) Other Yamaha products (ATV[s]) were sold from the Wilson location;

(4) Radio and newspaper ads advertise the Wilson store;

(5) Both the Kinston and Wilson locations were operated under the same corporate name; and that

Sixth, [the trial court] finds a[s] fact that ATV[]s are not includ[ed] within the definition of "motorcycle[,]"[] and the only advertising which violated the agreement between the parties [were] ads in the Wilson market which advertised the Wilson store as a sight for sales of either new product or ads which did not designate whether product was new or used . . . .

The trial court concluded as a matter of law that Defendants had breached the agreement with Plaintiffs and awarded Plaintiffs $10.00 as damages and $22,575.00 for attorney's fees for breach of the agreement. The trial court also concluded Defendants breached the verbal agreement and awarded Plaintiffs $1,000.00 as compensatory damages for breach of the verbal agreement. Defendants moved for a judgment notwithstanding the verdict and for a new trial. The trial court, however, denied Defendants' motions.

The issues are whether: (I) the trial court abused its discretion in permitting Lee Cycle to amend its complaint; (II) the trial court erred by concluding Defendants breached the agreement; (III) the trial court erred in denying Defendants' motion for judgment notwithstanding the verdict; (IV) the trial court erred in denying Defendants' motion for a new trial; and (V) there was a statutory basis for the trial court's award of attorney's fees to Plaintiffs.

I

[1] Defendants argue the trial court erred in allowing Lee Cycle to amend its complaint to include Lee Motor as a plaintiff. In support of this argument, Defendants contend: (A) Lee Cycle's failure to initially name Lee Motor as a plaintiff resulted in the lack of subject matter jurisdiction and (B) Lee Cycle was not permitted to bring a breach of contract action because Lee Cycle was not in privity of contract with Defendants. We disagree.

A

*Subject matter jurisdiction*

This Court has held that a plaintiff's failure to join a party does not result in "a lack of jurisdiction over the subject matter of the proceeding." *Stancil v. Bruce Stancil Refrigeration, Inc.*, 81 N.C. App. 567, 573, 344 S.E.2d 789, 793, *disc. review denied*, 318 N.C. 418, 349 S.E.2d 601 (1986). A plaintiff is permitted to request to amend a complaint to add a party, *Goodrich v. Rice*, 75 N.C. App. 530, 533-34, 331 S.E.2d 195, 197 (1985), and a trial court's ruling on the plaintiff's motion to amend its complaint will not be disturbed on appeal, absent an abuse of discretion, *Walker v. Sloan*, 137 N.C. App. 387, 402, 529 S.E.2d 236, 247 (2000). In this case, despite Lee Cycle's failure to name Lee Motor as a plaintiff, the trial court had subject matter jurisdiction over the action. We cannot hold the trial court abused its discretion by permitting Lee Cycle to amend its complaint and add Lee Motor as a plaintiff.

B

*Privity of contract*

To withstand a motion to dismiss for failure to state a claim in a breach of contract action, a plaintiff's allegations must either show it was in privity of contract, or it is a direct beneficiary of the contract. *See Chandler v. Jones*, 173 N.C. 427, 429, 92 S.E. 145, 146 (1917). Privity has been defined as " 'a [d]erivative interest founded on, or

growing out of, contract, connection, or bond of union between parties; mutuality of interest.' " *Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 15, 472 S.E.2d 358, 366 (1996) (quoting *Black's Law Dictionary* 1199 (6th ed. 1990)), *disc. review denied*, 345 N.C. 344, 483 S.E.2d 172 (1997). If a plaintiff is an intended beneficiary to a contract, the law implies privity of contract. *Id.*

In this case, viewing Plaintiffs' allegations in the light most favorable to Plaintiffs, *see Ford v. Peaches Entertainment Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986) (in ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, a trial court must determine "whether the facts alleged in the complaint, when viewed in the light most favorable to the plaintiffs, give rise to a claim for relief on any theory"), *disc. review denied*, 318 N.C. 694, 351 S.E.2d 746 (1987), Plaintiffs have sufficiently alleged privity of contract: Plaintiffs' complaint alleges Lee Cycle and Lee Motor are owned by the same sole shareholder; Lee, president of Lee Cycle and Lee Motor, signed the agreement and executed the promissory note; and Lee Cycle performed all the obligations of the agreement and received all the benefits from the seller. These allegations are sufficient to establish "a derivative interest founded on, or growing out of, contract, connection, or bond of union between the parties." Accordingly, the trial court properly denied Defendants' motion to dismiss for failure to state a claim.

## II

[2] Defendants argue the trial court's findings of fact are not supported by the evidence and do not support the conclusions of law that Defendants breached the agreement and damaged Plaintiffs. We disagree.

Appellate review of findings of fact "made by a trial judge, without a jury, is limited to . . . whether there is competent evidence to support the findings of fact." *Starco, Inc. v. AMG Bonding and Ins. Services*, 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996). A trial court's conclusions of law, however, are reviewable *de novo* on appeal. *Id.* at 336, 477 S.E.2d at 215. "For a breach of contract the injured party is entitled as compensation therefor[e] to be placed, insofar as this can be done by money, in the same position he would have occupied if the contract had been performed." *Perfecting Serv. Co. v. Product Dev. & Sales Co.*, 259 N.C. 400, 415, 131 S.E.2d 9, 21 (1963). Additionally, nominal damages are allowed where a legal right has been invaded but there has been no substantial loss or in-

jury to be compensated. *Potts v. Howser*, 274 N.C. 49, 61, 161 S.E.2d 737, 747 (1968).

In this case, there is competent evidence to support the trial court's findings of fact Defendants breached both the agreement and the verbal agreement. Evidence presented at trial shows: Defendants continued to use the name "Wilson Cycle Center"; Defendants continued to advertise they sold motorcycles and watercraft in their Wilson store; and Defendants led Plaintiffs to believe they were delivering a pre-sold Sea Doo watercraft to Hurst when Defendants instead later sold it to Temple for approximately $1,000.00 over what they indicated Hurst would be paying. Accordingly, $1,000.00 in damages to Plaintiffs puts the parties in the position they would have been in had the verbal agreement not been breached. In addition, the trial court did not err in awarding Plaintiffs $10.00 in nominal damages. The trial court's findings of facts establish Defendants breached the agreement, thus, Plaintiffs were entitled to some damages, despite not obtaining substantial injury as a result of the breach. Therefore, the trial court's findings of fact are supported by competent evidence and support the trial court's conclusions of law.

III

**[3]** Defendants next argue the trial court erred in denying Defendants' motion for judgment notwithstanding the verdict. We disagree.

In order to prevail on a claim for breach of contract, a plaintiff's evidence must show a valid contract existed between the parties, the defendant breached the terms of the contract, the facts constituting the breach, and damages resulted from the breach. *Claggett v. Wake Forest University*, 126 N.C. App. 602, 608, 486 S.E.2d. 443, 446 (1997).

In this case, viewing the evidence in the light most favorable to Plaintiffs, *see Smith v. Price*, 315 N.C. 523, 527, 340 S.E.2d 408, 411 (1986) (on a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the non-moving party), Plaintiffs produced substantial evidence to support every element of a breach of contract claim, *see Cobb v. Reitter*, 105 N.C. App. 218, 220, 412 S.E.2d 110, 111 (1992) (moving party entitled to judgment notwithstanding the verdict only if the non-moving party is unable to produce substantial evidence of the elements of its claim for relief). Plaintiffs established a contract existed between Lee

Motor and Defendants and we have stated in Part I of this opinion that Lee Cycle was permitted to sue on this contract. Furthermore, evidence existed Defendants breached the agreement by using the name "Wilson Cycle Center," by advertising the sale of motorcycles and watercraft within the prohibited area, and by breaching the verbal agreement. Accordingly, this evidence is substantial evidence Defendants breached the agreement with Plaintiffs. *See id.* (substantial evidence is evidence a reasonable mind might accept to support a conclusion). The trial court, therefore, did not err in denying Defendants' motion for judgment notwithstanding the verdict.

IV

**[4]** Defendants next argue the trial court erred in denying their motion for a new trial. We disagree. The trial court's ruling on a motion for a new trial is within the trial court's sound discretion and will not be reversed on appeal absent a showing that errors of law occurred at trial or the trial court's ruling amounted to a substantial miscarriage of justice. *Allen v. Beddingfield*, 118 N.C. App. 100, 101-02, 454 S.E.2d 287, 289, *disc. review denied*, 340 N.C. 109, 456 S.E.2d 310 (1995). Because we have stated in parts I, II, and III of this opinion that the trial court did not commit any errors of law and Plaintiffs presented substantial evidence Defendants breached the agreement, we cannot say, based on this record, the trial court's decision not to grant Defendants a new trial was an abuse of discretion or resulted in a miscarriage of justice.

V

**[5]** Defendants finally argue the trial court erred in awarding Plaintiffs attorney's fees without a statutory basis for such an award. We agree.

It is well established in this State that "[e]ven in the face of a carefully drafted contractual provision indemnifying a party for such attorney[']s[] fees as may be necessitated by a successful action on the contract itself, our courts have consistently refused to sustain such an award absent statutory authority therefor." *Stillwell Enterprises, Inc. v. Interstate Equipment Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814-15 (1980);[2] *see Delta Env. Consultants of N.C. v. Wysong & Miles Co.*, 132 N.C. App. 160, 167, 510 S.E.2d 690, 695, *disc.*

---

2. Our Supreme Court has carved out an exception to this general rule, permitting the enforcement of attorney's fees provisions contained in separation agreements. *Bromhal v. Stott*, 341 N.C. 702, 704, 462 S.E.2d 219, 221 (1995).

*review denied and appeal dismissed,* 350 N.C. 379, 536 S.E.2d 70 (1999) (successful litigant cannot recover attorney's fees as costs absent an express statutory basis for such an award). In this case, despite a contractual provision in the agreement providing the breaching party pay attorney's fees in the event the non-breaching party brings suit to enforce the agreement, there is no express statutory authority permitting the award of attorney's fees in breach of contract cases.

Plaintiffs first contend N.C. Gen. Stat. § 6-21.2 provides the statutory basis for the trial court's award of attorney's fees. We disagree. This section provides:

> Obligations to pay attorney[']s[] fees upon any note, conditional sale contract or other evidence of indebtedness . . . shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected . . . after maturity . . . .

N.C.G.S. § 6-21.2 (1999). Thus, section 6-21.2 allows (1) the party owed the debt (2) to recover attorney's fees (3) after the debt has matured (4) provided it is written in the note, conditional sale contract, or other evidence of indebtedness. N.C.G.S. § 6-21.2; *see First Citizens Bank & Tr. Co. v. 4325 Park Rd. Assocs., Ltd.,* 133 N.C. App. 153, 157, 515 S.E.2d 51, 54 (attorney's fees in the event of default by the maker of a promissory note), *disc. review denied,* 350 N.C. 829, 539 S.E.2d 284 (1999); *RC Associates v. Regency Ventures, Inc.,* 111 N.C. App. 367, 373-74, 432 S.E.2d 394, 398 (1993) (one purpose of N.C. Gen. Stat. § 6-21.2 "is to allow the debtor a last chance to pay the outstanding balance to avoid litigation and the award of attorney's fees").

In this case, the parties owed the debt, Defendants, are not seeking to recover attorney's fees. In any event, the debt has not matured. Accordingly, section 6-21.2 cannot form the statutory basis to award Plaintiffs attorney's fees, thus, the trial court erred in awarding Plaintiffs attorney's fees.

Plaintiffs alternatively contend that N.C. Gen. Stat. § 6-20 provides the statutory basis for the attorney's fees award. We disagree. Section 6-20 provides for the trial court to allow "costs" in its discretion. N.C.G.S. § 6-20 (1999). Assessable costs in civil cases are limited to those items listed in section 7A-305. *Sara Lee Corp. v. Carter,* 129 N.C. App. 464, 474, 500 S.E.2d 732, 738, *reversed on other grounds,*

351 N.C. 27, 519 S.E.2d 308 (1999). Attorney's fees are permitted under section 7A-305 only "as provided by law." N.C.G.S. § 7A-305(d) (1999); *see Records v. Tape Corp. and Broadcasting System v. Tape Corp.*, 18 N.C. App. 183, 187, 196 S.E.2d 598, 602 (attorney's fees "are not recoverable . . . as an item . . . of costs, absent express statutory authority for fixing and awarding them"), *cert. denied,* 283 N.C. 666, 197 S.E.2d 880 (1973). Thus, section 6-20 does not authorize a trial court to include attorney's fees as a part of the costs awarded under that section, unless specifically permitted by another statute.

Affirmed in part, and reversed in part.

Judge JOHN concurs.

Judge TYSON concurs in part and dissents in part with separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I concur in parts I through IV of the majority's opinion. I disagree with the majority's conclusion that plaintiffs are not entitled to recover attorney's fees under either G.S. § 6-21.2 or G.S. § 6-20. Accordingly, I respectfully dissent from part V of the majority's opinion.

As the majority's opinion notes, G.S. § 6-21.2 provides:

Obligations to pay attorneys' fees upon any note, conditional sale contract or <u>other evidence of indebtedness</u> . . . shall be valid and enforceable, and collectible as part of such debt, if such note, contract or <u>other evidence of indebtedness</u> be collected . . . after maturity . . . .

N.C. Gen. Stat. § 6-21.2 (1999) (emphasis supplied). The majority's opinion concludes that G.S. § 6-21.2 does not provide statutory authority for plaintiffs to recover attorney's fees because "the party owed the debt, Defendant, is not seeking to recover attorney's fees." I disagree with this analysis.

The phrase "other evidence of indebtedness" contained in G.S. § 6-21.2 has been defined by our Supreme Court to include "any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obliga-

tion to pay money." *Stillwell Enterprises, Inc. v. Interstate Equipment Co.*, 300 N.C. 286, 294, 266 S.E.2d 812, 817 (1980). The Supreme Court stated that such a definition "does no violence to any of the statute's specific provisions and accords well with <u>its general purpose to validate a debt collection remedy expressly agreed upon by contracting parties</u>." *Id.* at 294, 266 S.E.2d 817-18 (emphasis supplied).

In *Stillwell*, the Supreme Court reversed this Court's holding that G.S. § 6-21.2 was inapplicable, and that an award of attorney's fees arising out of a lease dispute was improper. *Id.* at 295, 266 S.E.2d at 818. The Court noted that the lease agreement at issue contained a legally enforceable obligation by the plaintiff-lessee to remit rental payments to the defendant-lessor in exchange for use of property. *Id.* at 294, 266 S.E.2d at 818. Holding that such an agreement "is obviously an 'evidence of indebtedness,' " the Court held: "we see no reason why the obligation by plaintiff to pay attorneys' fees incurred by defendant <u>upon collection of the debts arising from the contract itself</u> should not be enforced to the extent allowed by G.S. § 6-21.2." *Id.* at 294-95, 266 S.E.2d at 818 (emphasis supplied).

This Court has also held that "evidence of indebtedness" under G.S. § 6-21.2 applies to a stock purchase agreement. *Nucor Corp. v. General Bearing Corp.*, 103 N.C. App. 518, 520, 405 S.E.2d 776, 777 (1991), *rev'd on other grounds*, 333 N.C. 148, 423 S.E.2d 747 (1992) (holding G.S. § 6-21.2 authorizes award of attorney's fees under agreement obligating the defendant to convey to the plaintiff outstanding stock in defendant's corporation and to pay additional fees, where such agreement was clearly evidence of indebtedness).

Paragraph 13 of the Asset Purchase Agreement ("Agreement") in this case expressly requires the parties to indemnify each other "for any damages incurred . . . as a result of the breach of any warranty . . . including all costs, attorneys' fees or other expenses <u>arising out of any suit or action brought to enforce any rights conferred hereunder</u>." (emphasis supplied). Paragraph 13 of the Agreement further provides:

> In the event of any violation by the Seller of any representations and/or warranties set forth herein, including but not limited to the provisions of Paragraph 11 hereof ["Covenant Not to Compete"], <u>then Purchaser shall have the right to offset any payments that may be due the Seller pursuant to the provisions hereof in the</u>

**amount by which Purchaser has been damaged by any such breach.**

(emphasis supplied).

The $1,010.00 awarded plaintiffs by the trial court is "evidence of indebtedness." The Agreement provided for payments over and above the promissory note. Paragraph 13 of the Agreement also provides plaintiffs the right to offset the amount owed under the agreement by the $1,010.00 awarded. Plaintiffs sought such an offset and cancellation of the outstanding notes in their complaint. Plaintiffs are creditors of defendants on a "matured" debt. Thus, consistent with the Supreme Court's holding in *Stillwell*, G.S. § 6-21.2 provides authority for plaintiffs to recover the attorney's fees "upon collection of the debts arising from the contract itself." *Stillwell* at 294-95, 266 S.E.2d at 818 (emphasis supplied).

The trial court's award of attorney's fees is also authorized by G.S. § 6-20. G.S. § 6-20 provides that, "[i]n other actions, costs may be allowed or not, in the discretion of the court, unless otherwise provided by law." N.C. Gen. Stat. § 6-20 (1999). A trial court may, in its discretion, award attorney's fees under G.S. § 6-20 if "just and equitable." *Batcheldor v. Boyd*, 119 N.C. App. 204, 208, 458 S.E.2d 1, 3-4, *disc. review denied*, 341 N.C. 418, 461 S.E.2d 753 (1995) (citing *Wachovia Bank & Trust Co. v. Dodson*, 260 N.C. 22, 131 S.E.2d 875 (1963)); *see also, Alsup v. Pitman*, 98 N.C. App. 389, 390, 390 S.E.2d 750, 751 (1990) (recoverable costs under G.S. § 6-20 may, in trial court's discretion, include expenses for depositions).

In suits in equity, the allowance of costs rests in the discretion of the court. *Worthy v. Brower*, 93 N.C. 492 (1885). Under G.S. § 6-20, the trial court's allowance of attorney's fees as a part of costs is within the court's sound discretion and "will not be disturbed on appeal absent an abuse of discretion." *Wachovia Bank of North Carolina, N.A. v. Bob Dunn Jaguar, Inc.*, 117 N.C. App. 165, 175, 450 S.E.2d 527, 533 (1994) (citation omitted).

In this case, plaintiffs sought the equitable remedies of (1) cancellation of the Agreement, (2) prohibiting defendants from collecting any sums due under the Agreement, and (3) returning to plaintiffs any monies paid under the Agreement. The trial court ordered that defendants be "restrained from any further violations of the Agreement." This remedy is equitable in nature. Thus, under G.S. § 6-20, the trial court had discretion to award plaintiffs costs, in-

IN RE DULA

[143 N.C. App. 16 (2001)]

cluding attorney's fees. Defendants present no evidence of an abuse of discretion in the trial court's award. I would affirm the trial court's award of attorney's fees under either G.S. § 6-21.2 or G.S. § 6-20. I, therefore, respectfully dissent from part V of the majority's opinion.