**SUNBELT RENTALS, INC., Plaintiff**

v.

**Douglas CORBRIDGE d/b/a East Coast Construction Co. or D.C. & Sons Builders, Defendant**

**No. CIV. 00–363–P–K.**

United States District Court, D. Maine.

Nov. 14, 2001.

Damon M. Seligson, Gordon P. Katz, Holland & Knight LLP, Douglas W. Clapp, Holland & Knight, Boston, MA, for Plaintiff.

Douglas Corbridge, Fryeburg, ME, Pro se.

### MEMORANDUM OF DECISION [1]

KRAVCHUK, United States Magistrate Judge.

This matter was tried before me on October 23, 2001. I now make the following findings of fact and conclusions of law. Based upon those findings and conclusions, the clerk is directed to enter judgment for Sunbelt Rentals, Inc. in the amount of $44,181.65, plus interest at the rate of 8% from March 12, 2000 through the date of judgment, plus attorneys' fees in the amount of $6,627.25, plus costs.

### Findings of Fact

Defendant Douglas Corbridge, doing business under the name of East Coast Construction Co. and D.C. & Sons Builders, is the owner of a general construction company operating through a mailing address in Chocorua, New Hampshire. The company operates on an interstate basis. In January 2000, Corbridge had a contract with FEMA that took him to Princeville, North Carolina to a mobile home park where he had been hired to remove debris associated with a recent hurricane. Corbridge employed approximately six employees directly and had a number of subcontractors working for him at the site.

---

**1.** Pursuant to Fed.R.Civ.P. 73(b), the parties have consented to allow the United States Magistrate Judge to conduct any and all proceedings in this matter.

While he was in North Carolina at the site in January 2000, Corbridge was approached by Jerry Powers, a salesman representing plaintiff Sunbelt Rentals, Inc., which leases heavy equipment to contractors such as Corbridge. A member of Sunbelt's sales force had learned that Corbridge was working in the area and had rented some equipment from a competitor. Corbridge needed additional equipment that the competitor could not provide, so he agreed to rent a lawn rake, a tractor and a backhoe from Sunbelt. At the job site on January 21, 2000, Corbridge signed a rental contract and completed a credit application, including a personal guaranty, for the equipment. The rental rates were as follows: (1) the tractor—$450.00 / week or $1200.00 for a 4 week period; (2) the landscape rake—$125.00 / week or $400.00 for a 4 week period; and (3) the loader backhoe—$450.00 / week or $1350.00 for a 4 week period. (Def.'s Ex. # 2). It is undisputed that the equipment was received in good working order at the job site. (Pltf.'s Ex. # D). According to the written exhibits the lawn tractor and rake were delivered on January 21, 2000 and the backhoe arrived on site on February 7, 2000.

Patrick Allston, Corbridge's subcontractor at the site, apparently used the equipment throughout February and into March. In approximately mid-March 2000 Sunbelt received notification that the equipment was no longer needed. When Powers attempted to retrieve the items from the job site, however, he found them missing. Unable to recover the equipment, Sunbelt notified law enforcement authorities of the situation and attempted to contact Corbridge to arrange for payment and/or recovery of the property. Corbridge admitted that he failed to return the tractor, lawn rake and backhoe to Sunbelt. Corbridge made no rental payments nor any other payments under the contract and took no action to notify authorities about the missing equipment. He did not respond to Sunbelt's invoices sent to him at the "Cho covia" (sic) address, although his exhibits indicate that he clearly received them. When contacted by telephone by Dawn Porter, an administrative assistant with Sunbelt, Corbridge assured her the check would be "in the mail." No payment was received.

Finally in January 2001, after the present action had been commenced, the tractor was recovered by law enforcement authorities in Roanoke Rapids, North Carolina, and the backhoe in Goldsboro, North Carolina. The landscape rake was never recovered. To date Sunbelt has expended $1129.09 for repairs to the tractor and anticipates that an additional $7419.68 will be expended on a blown engine in order to render the tractor fit for use. (Pltf.'s Ex. # H). Sunbelt spent $2117.63 on repairs to the backhoe (Pltf.'s Ex. # I) and asserts that additional funds have been spent on incidental repair expenses in connection with the backhoe. The lawn rake's value at the time of its loss was not disclosed by the evidence. Sunbelt continued to accrue rental charges for the equipment through January 2001, although it ceased generating invoices to Corbridge after March 23, 2000, when the equipment was supposed to have been returned.

Pursuant to the terms of the contract between the parties, ¶ 5, Corbridge agreed to pay Sunbelt the full value of the equipment in the event it was lost or destroyed and the full cost of repair in the event it was damaged, with his liability for rentals for any lost, damaged or destroyed equipment continuing until Sunbelt had been paid in full. Furthermore, Corbridge agreed to submit a police report to Sunbelt within 48 hours of any loss due to theft or vandalism. Corbridge could have modified

these responsibilities by electing to pay a damage waiver provision under the contract, consisting of 12% of the gross rental charges. Corbridge never paid this amount, although invoiced for it, and therefore ¶ 6 of the contract, containing the loss and damage waiver, never became effective as the provision states it is only effective if the account is current at the time of the loss and damage. Obviously, Corbridge's account was not current in mid-March 2000.

One other contract term requires note. The contract provided in ¶ 9 that Corbridge would pay reasonable attorneys' fees and other collection costs in association with Sunbelt's actions to recover for breach of the contract. Plaintiff's counsel has submitted to the court an affidavit requesting $37,668.00 in fees and costs in association with the prosecution of this claim. Of that amount, $4,900.50 is attributable to the fees of a private investigator who provided various investigative services in connection with this action. The remainder is attorneys' fees.

The total amount sought under the lease for rental payments, invoice charges, and rental repairs is $48,815.25, broken down as $6,965.25 for invoice charges, $15,300 for the cost of repairs, and $26,550 for nine months' lost rental value. Plaintiff's lost rental calculations are based upon $10,800 in lost rental for the tractor, $12,150 in lost rental value for the backhoe, and $3,600 in lost rental for the rake. In its proposed findings plaintiff does not provide any breakdown of the $15,300 for repairs, and the testimony presented at trial on this issue was unclear and referenced lost invoices and other "forgotten" expenses.

### Conclusions of Law

The contract in this case provided that North Carolina law would govern (¶ 11). Accordingly I have applied general principles of North Carolina contract law to the facts. Corbridge, on behalf of East Coast, entered into the contract with Sunbelt and provided a personal guaranty on the contract. Corbridge admitted that he failed to pay for the use of three pieces of leased equipment and failed to return them to Sunbelt. Therefore, Corbridge and East Coast breached the contract and are liable to Sunbelt for damages amounting to "full compensation for [its] loss," placing it "as near as may be in the condition which [it] would have occupied had the contract not been breached." *Troitino v. Goodman*, 225 N.C. 406, 35 S.E.2d 277, 281 (1945).

As a result of Corbridge and East Coast breaching the contract, Sunbelt has suffered damages including nonpayment of the invoices and lost rental amounts totaling $33,515.25. Based upon my calculations, which differ from those made by plaintiff's counsel, Sunbelt has expended, or will expend, $10,666.40 for repairs to the equipment. Sunbelt is therefore entitled to damages for these two categories in the amount of $44,181.65. The lost rental incurred from March 2000 to January 2001 is a reasonably foreseeable element of damages and, indeed, the parties anticipated just such a loss in ¶ 5 of the rental agreement. Regarding this lost rental value, Sunbelt attempted to minimize its damages by immediately trying to retrieve the leased equipment, notifying Corbridge in New Hampshire of the situation and notifying the local police department of the facts. Corbridge, the party who breached the contract, had the burden of proof to show that Sunbelt failed to take prompt action to minimize its losses. *United Labs., Inc. v. Kuykendall*, 102 N.C.App. 484, 403 S.E.2d 104, 108 (1991). He offered no evidence tending to suggest that Sunbelt failed to take appropriate steps.

■ Sunbelt is entitled to interest from the date of the breach of the contract under North Carolina law. *Interstate Equip. Co. v. Smith*, 234 S.E.2d 599, 601–602 (N.C.1977). While it is arguable that the contract in this case called for interest at the rate of 18% per annum on the unpaid balance, Sunbelt has indicated that it seeks interest from the date of the contract breach, placed by Sunbelt at March 12, 2000, at the "legal rate" of interest under North Carolina law. Currently the "legal," or statutory, rate of interest is 8%. *Barrett Kays & Assos., P.A. v. Colonial Bldg. Co., Inc. of Raleigh*, 129 N.C.App. 525, 500 S.E.2d 108, 112 (1998); *see also* N.C.G.S. § 24–1. Accordingly Sunbelt is entitled to interest of 8% per annum from March 12, 2000, on the amount of damages awarded.

■ The final issue presented to the court relates to the recovery of attorneys' fees and costs. Under North Carolina law there must be a statutory basis for the recovery of reasonable attorneys' fees and costs associated with the enforcement of a contract, even when the written contract itself provides that attorneys' fees may be recovered. The relevant statutory provision is N.C.G.S. § 6–21.2, which provides as follows:

§ 6–21.2. Attorneys' fees in notes, etc., in addition to interest

■ Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:

(1) If such note, conditional sale contract or other evidence of indebtedness provides for attorneys' fees in some spe-cific percentage of the "outstanding balance" as herein defined, such provision and obligation shall be valid and enforceable up to but not in excess of fifteen percent (15%) of said "outstanding balance" owing on said note, contract or other evidence of indebtedness.

(2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

North Carolina's courts have held that even when a contract provides for attorneys' fees and collection costs, those fees are recoverable only in accordance with this statutory provision. *Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C.App. 1, 545 S.E.2d 745, 752 (2001). Sunbelt claims (correctly) that the printed lease agreement is evidence of indebtedness within the meaning of § 6–21.2. *Accord Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 266 S.E.2d 812, 818 (1980) (holding an award of attorneys' fees arising out of a lease dispute was proper; such an agreement "is obviously an 'evidence of indebtedness'"). It is therefore entitled to recover its attorneys' fees in accordance with the relevant statutory provisions.

■ However, there are some impediments to Sunbelt's recovery of requested attorneys' fees in this case. The statutory provision requires that the breaching party must be given written notice that it has five days to pay the outstanding balance owed without the attorneys' fee and if the balance is paid in full within those five days the obligation to pay attorneys' fees is terminated. N.C.G.S. § 6–21.2(5). There is no evidence that Corbridge was given the requisite written notice under

the statute. On the other hand, Corbridge has not raised this failure as an issue in this case. North Carolina law on the issue of compliance with the statutory notice provision is relatively clear. "[C]ase law is clear that a party seeking to collect attorneys' fees incurred in the enforcement of a note must notify in writing the opposing party of this intent." *Thomas v. Miller,* 105 N.C.App. 589, 414 S.E.2d 58, 60 (1992). Where the record fails to contain any evidence of such notice to the debtor, attorneys' fees are improperly granted. *Crist v. Crist,* 550 S.E.2d 260, 265 (N.C.Ct.App. 2001). However, defendant has never raised the issue of notice under North Carolina's statute. I have been unable to find applicable North Carolina law addressing the issue of whether defendant is required to raise this claim as an affirmative defense or waive it. I have elected to treat this claim as waived, although I acknowledge the issue.

Assuming that Sunbelt's failure to present evidence on the issue of compliance with the notice provision is waived, its recovery for attorneys' fees is still limited to 15% of the final judgment in this case. I will authorize an award of fees in the amount of $6,627 .25 as the number of hours submitted in the affidavit far exceeds the statutorily allowed fee and I am satisfied that the allowed fee is reasonable for the work done on this case.

### Conclusion

Based upon the foregoing I will direct that the clerk enter judgment as follows: for Sunbelt Rentals, Inc. in the amount of $44,181.65, plus interest at the rate of 8% from March 12, 2000 through the date of judgment, plus attorneys' fees in the amount of $6,627.25, plus costs.

*So Ordered.*