595 So.2d 168 (1992)
Mary J. SWAIN and Charles Swain, her husband, Appellant,
v.
Calvin H. CURRY, M.D., Appellee.
No. 91-1208.
District Court of Appeal of Florida, First District.
February 19, 1992.
Michael T. Callahan and John S. Derr of Callahan, Dobbins & Derr, Tallahassee, for appellants.
Patrick J. Farrell, Jr. and Ben A. Andrews of Fuller, Johnson & Farrell, Tallahassee, for appellee.
KAHN, Judge.
Mary and Charles Swain appeal an order of dismissal and partial final summary judgment entered against them. We reverse.
In May 1987, Mary Swain, who is presently forty eight years old, consulted Dr. Curry, her obstetrician/gynecologist, about a lump in her left breast at the 4:00 position *169 near the nipple. According to Mrs. Swain, Dr. Curry told her the lump was a fibrocystic change in the breast and agreed to order a mammogram. Dr. Curry has no independent recollection of the visit. His office notes do not mention a lump, but do state that he requested Mrs. Swain to get a baseline mammogram. When the mammogram was performed on June 3, 1987, Mrs. Swain indicated on the radiologist's information sheet that she had a lump in her left breast. The result of the mammogram was negative.[1] Dr. Curry advised no particular follow-up, beyond the one mammogram. Near the end of 1987, the lump became larger, the skin around it dimpled, and Mrs. Swain experienced periodic burning. In May 1988, Mrs. Swain returned to Dr. Curry and told him about these developments. Dr. Curry said that because the lump was fibrocystic there was nothing he could do except send her to a surgeon to have the lump aspirated. On June 6, 1988, Mrs. Swain met with Dr. Robert Snyder, a general surgeon, to have the lump aspirated. According to Mrs. Swain, Dr. Snyder could not aspirate the lump and decided to perform a biopsy. The biopsy performed on June 16, 1988 revealed a malignant tumor, determined at surgery to be 1.9 centimeters in diameter. The two treatment options available to Mrs. Swain were a modified radical mastectomy or a lumpectomy, sometimes termed wide resection. Dr. Snyder recommended a modified radical mastectomy which involved removal of the left breast and thirteen lymph nodes from the adjacent underarm. After consulting two other physicians, the Swains decided that Mrs. Swain should have a modified radical mastectomy. Dr. Snyder operated on July 12, 1988. After surgery, pathology studies revealed that three of the excised lymph nodes were malignant. Mrs. Swain underwent six months of chemotherapy and later had her left breast reconstructed from skin taken from her back, upper left thigh, and groin. At the present time Mrs. Swain has no clinical evidence of recurrence of cancer.
On March 13, 1990, the Swains filed suit against Dr. Curry, alleging that he negligently failed to diagnose and treat Mrs. Swain's cancer.[2] The Swains further alleged that as a direct and proximate result of Dr. Curry's negligence Mrs. Swain
sustained permanent scarring and disfigurement, pain and suffering, mental anguish over her condition, a loss of capacity for the enjoyment of life, a significant reduction in her life expectancy, a loss of society, comfort and companionship, a permanent and drastic diminution in the quality of her life, she has been required to undergo and be obligated to pay for extensive medical treatment and reconstructive surgery and will continue to require periodic treatment and other surgical procedures in the future, and will be obligated to pay for such treatment and surgical procedures in the future; in addition, she will be in the future required to undergo and be obliged to pay for extensive medical treatment and care, including nursing care, and other life care services made necessary by the natural progression of the disease up until the time of her untimely death.
Mr. Swain's individual claim alleged he had "suffered and will suffer in the future the diminution and premature loss of his spouse's services[,] society, companionship, love, affection, aid, and comfort, has become *170 obligated and will in the future be obligated to pay for her medical, hospital and nursing treatment."
On February 2, 1991, Dr. Curry filed a motion for summary judgment. After a hearing on the motion, the trial court entered an order of dismissal. The order dismissed the case without prejudice based upon the trial court's determination that no cause of action had arisen at the time. The order provided that the statute of limitations would begin to run at the time Mrs. Swain learns or with due diligence should learn of any clinically determinable metastasis. Upon rehearing, the trial court amended the order of dismissal and entered a "partial summary judgment" for Dr. Curry. In the amended order, the trial court concluded: (1) the Swains have no cause of action for an increased risk of cancer, (2) the Swains have no present cause of action for a decreased chance of survival, (3) the Swains have no present cause of action for reduction in life expectancy, (4) no cause of action exists for damages based upon fear of having a recurrence of cancer, (5) there exists no issue of material fact that had the alleged malpractice not occurred, the options for the surgical and chemotherapeutical treatment actually rendered would have been the same, (6) the statute of limitations will not commence to run until the Swains learn or should with due diligence learn of any clinically determinable metastasis.
On appeal the Swains argue: (1) there is an issue of material fact as to whether Mrs. Swain's treatment and related damages would have been different had the cancerous growth been detected and treated at an earlier date, (2) the law does not require the Swains to split their cause of action between damages which have occurred and those which, to a reasonable degree of medical probability, will be suffered, and (3) increased fear of the recurrence of cancer is a proper element of damages in a medical malpractice claim arising from a failure to timely diagnose and treat breast cancer.
A review of the record indicates the existence of an issue of material fact concerning the treatment Mary Swain would have most likely received had the cancer been earlier detected. Dr. Schapira, chief of the Section of Cancer Prevention at the Moffitt Cancer Center at the University of South Florida, testified that Mrs. Swain's cancer would have been about one centimeter in size in 1987. In Schapira's opinion, had the lesion been detected at this size, Mrs. Swain's treatment probably would have been lumpectomy and radiation to the breast. Dr. Schapira also testified that Mrs. Swain would not have received chemotherapy if she had no axillary node involvement. Schapira thus opined that the delay in diagnosis affected the treatment modalities for Mrs. Swain's cancer. On the other hand, Dr. Mabry, Mrs. Swain's oncologist, and Dr. Snyder testified that the treatment options in 1987 would have been the same as in 1988.
The testimony of Dr. Schapira conflicts with that of Dr. Mabry and Dr. Snyder. "If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Moore v. Morris, 475 So.2d 666 (Fla. 1985) (citations omitted). Having established a material dispute in this regard, Mrs. Swain is entitled to proceed with her claim that she has suffered additional physical damages as a result of the delayed detection. Obviously, she will be bound at trial to present competent evidence as to the elements of this claim.
Since Mrs. Swain is entitled to a trial on present damages, we must determine whether she has the right to seek, in this action, compensation for future loss.
Dr. Curry, relying upon Eagle-Picher Industries, Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA), rev. denied, 492 So.2d 1331 (Fla. 1986), argues that any claim for future damages is merely "inchoate," and should be allowed to ripen before such damages could be recovered. Dr. Curry acknowledges the testimony from Dr. Schapira which attributes to Mrs. Swain a 65% statistical probability that she will develop a recurrence of the cancer. Dr. Schapira has also testified that timely follow-up and diagnosis *171 of Mrs. Swain's condition would have revealed a "minimal" breast cancer, with a statistical survival rate of 90 to 95%. Nonetheless, argues Dr. Curry, Mrs. Swain's allegation of an increased risk of recurrence of cancer in the future is purely speculative as a matter of law.
In Eagle-Picher, the Third District considered the claim of an asbestosis victim that he should be able to recover present damages for a future enhanced risk of cancer as the result of an asbestos exposure. At the time of trial, the plaintiff in Eagle-Picher had asbestosis but not cancer. After explaining the historical and policy reasons behind the rule against splitting causes of action, the court decided that, in asbestos exposure claims, damages for increased risk of cancer could not be recovered, and in order to recover such damages, the plaintiff must "await the actuality of cancer," bringing at that time a separate action. 481 So.2d at 521. Significantly, however, the court framed its rationale in the vernacular of asbestos claims and expressly limited its holding to that context.[3]
Mrs. Swain argues that she should not be singled out for treatment any different than that normally accorded the plaintiff in a personal injury lawsuit. She suggests that she has but a single cause of action which has already accrued. Since the Swains' damages have been caused, arguably, by the single event of medical negligence, there exists but a single cause of action giving rise to different elements of damage. The rule against splitting causes of actions thus requires that the Swains seek and recover all relief in one action. E.g., Thermofin, Inc. v. Woodruff, 491 So.2d 344 (Fla. 4th DCA 1986). The Swains acknowledge that they are subject to the proximate causation requirements of Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla. 1984). They urge, however, that the Eagle-Picher holding should be strictly limited to its facts.
As further support for their position, the Swains argue that the applicable statute of limitations, section 95.11(4)(b), Florida Statutes (1985), has commenced to run, and is not tolled, awaiting such time as Mrs. Swain discovers a recurrence of cancer. In Barron v. Shapiro, 565 So.2d 1319 (Fla. 1990), the supreme court held that the two-year limitation period for medical negligence commences when the plaintiff should have known either of the injury or the negligent act. Since the Swains learned of the act they now consider to have been negligent in June of 1988, the date of the biopsy, and learned of the injuries shortly thereafter when Mrs. Swain underwent a modified radical mastectomy, they assert that the statute of limitations compels them to recover all damages in the present action.
The Swains appear to be correct in their interpretation of Barron, and thus of its effect upon their cause of action. The decisions since Barron continue to hold potential plaintiffs to a fairly stringent standard in initiating their actions for medical malpractice. See University of Miami v. Bogorff, 583 So.2d 1000, 1002 (Fla. 1991) (where child became comatose three months after medical treatment, parents were on notice of the "possible invasion" of their legal rights and the limitation period began running); Goodlet v. Steckler, 586 So.2d 74 (Fla. 2d DCA 1991) (the statute of limitations is triggered by knowledge of either injury, or of the standard of care owed by the doctor and the facts tending to establish a breach of the standard of care); Tanner v. Hartog, 593 So.2d 249 (Fla. 2d DCA 1992).[4]
*172 We conclude that the statute of limitations has begun to run as to the Swains' cause of action, since they are undoubtedly on notice as to both injury and possible breach of care. We can find no support in the facts of this case, or in the case law provided to us, to suggest that the statute, having commenced to run, is now somehow tolled until Mrs. Swain discovers, or (even more enigmatically), should discover, a recurrence of cancer.
We agree with appellant's contention that the Eagle-Picher case was expressly limited to its facts, and thus Mrs. Swain will not be required to split her cause of action. In so holding, we point out a factual matter that further distinguishes this case from the asbestosis context. With asbestos exposure, many victims never actually have cancer. Thus, the question in the asbestos case is whether cancer will ever develop in the first place as the ultimate result of an exposure. Mrs. Swain, on the other hand, has had cancer. Obviously, the negligence, if any, of Dr. Curry did not cause the cancer. The Swains argue, however, that they can prove that the virulent and life threatening effect of the disease has been exacerbated by negligent treatment. In truth, if Mrs. Swain develops symptoms of cancer in the future, this will not mean that the disease has recurred, but rather, that the disease was never completely eradicated by what they contend was delayed treatment. Factually, this scenario is accurate. If Mrs. Swain is going to have a detectable recurrence in the future, then she does, in fact, presently have the disease in the form of micrometastases. This grim observation buttresses, in our estimation, the Swains' claim for recovery of all damages in the present action.
Having decided that the Swains will not be required to split their cause of action, we further hold that the trial court erred by finding that Mrs. Swain has no "present cause of action" for increased risk of cancer, for a decreased chance of survival, or for reduction in life expectancy. The nomenclature utilized in the order under review is simply incorrect. The three matters addressed by the trial court do not encompass "causes of action," but rather describe elements of damage. The Florida Standard Jury Instructions in Civil Cases should provide ample guidance for further proceedings in this case. As to future damages and losses, the Standard Jury Instructions place a relatively higher burden upon the plaintiff than that which applies to damages already manifest:
You should award plaintiff an amount of money that the greater weight of the evidence shows will fairly and adequately compensate him for such loss, injury or damage, including any such damage as plaintiff is reasonably certain to incur or experience in the future.

Fla.Std.Jury Instr. (Civ.) 6.1.
The specific elements of damage that the trial court found to be either nonexistent as a matter of law, or noncompensable, appear to us to fit within the existing framework of damages law in this state. With regard to increased risk of cancer, Florida law clearly provides damages for any bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life to be experienced in the future. Taylor Imported Motors, Inc. v. Smiley, 143 So.2d 66 (Fla. 2d DCA 1962); Griffing *173 Bros. Co. v. Winfield, 53 Fla. 589, 43 So. 687 (1907); Baggett v. Davis, 124 Fla. 701, 169 So. 372 (1936) (bodily injury); Smith v. Bagwell, 19 Fla. 117 (1882) (pain and suffering); Pendarvis v. Pfeifer, 132 Fla. 724, 182 So. 307 (1938) (disability or physical impairment); Butler v. Lomelo, 355 So.2d 1208 (Fla. 4th DCA 1977) (mental anguish); Fraysier v. United States, 566 F. Supp. 1085 (S.D.Fla. 1983); Fla.Std.Jury Instr. (Civ.) 6.2(a). As to decreased chance of survival and reduction in life expectancy (the legal distinction in the two appearing minimal), Florida law provides recovery for any aggravation of an existing disease. Taylor Imported Motors, Inc. v. Smiley, supra; Hollie v. Radcliffe, 200 So.2d 616 (Fla. 1st DCA 1967); Fla.Std.Jury Instr. (Civ.) 6.2(b). As to each of the three items enumerated by the trial court, Florida law envisions such damages as are competently shown for the reasonable value or expense of hospitalization and medical treatment, as well as any loss of ability to earn occurring in the future. Taylor Imported Motors, Inc. v. Smiley, supra; Griffing Bros., Co. v. Winfield, supra; Loftin v. Wilson, 67 So.2d 185 (Fla. 1953); Baggett v. Davis, supra; Fla.Std.Jury Instr. (Civ.) 6.2(c) and (d). Finally, Mr. Swain's claim for loss of consortium is also connected to the evidence of what the future holds in store for Mrs. Swain, since, under the law, he is entitled to any loss by reason of his wife's injury, her services, comfort, society and attentions in the future. We would certainly not consider Mrs. Swain's premature death to be an insignificant event as it relates to her husband's potential loss of services, comfort, society and attentions. Cf., Lithgow v. Hamilton, 69 So.2d 776 (Fla. 1954).
Finally, Mrs. Swain is entitled to attempt to prove that her emotional damages are presently greater as a result of such increased fear of recurrence of cancer as has resulted from any provable negligence. Such damages are recoverable, not as a separate cause of action, but as an element of personal injury damages under Florida Standard Jury Instruction 6.2(a).
By this holding, we do not mean to suggest that Mrs. Swain will be successful in proving these damages. Indeed, it is self-evident that anyone, once diagnosed with and treated for cancer, will endure a fear of recurrence. Claimant in this case certainly faces a formidable obstacle in attempting to demonstrate to the satisfaction of the finder of fact that her emotional distress is of a demonstrably and quantifiably different degree now, as compared to the case of prompt diagnosis and treatment. Difficulty of proof will not, however, deprive a plaintiff of the opportunity to present her case. Evers v. Dollinger, 95 N.J. 399, 471 A.2d 405 (1984). See generally, Gale and Goyer, Recovery for Cancerphobia and Increased Risk of Cancer, 15 Cumb.L.Rev. 723 (1985) (positing that fear of cancer as a measure of compensable damages in a legal action is merely a subcategory of damages for emotional distress or mental anguish, tracking the history of recovery for mental anguish over the fear of developing a future condition or disease due to another's negligence, and pointing out distinctions in the claim for fear of cancer, and the claim for actual increased risk of cancer).
By way of analogy, we note that the damages sought in this case are no less elusive than at least one item of damages commonly allowed in commercial litigation  lost future profits. Commercial law recognizes that mere uncertainty as to amount will not defeat a claim for recovery of prospective profits, so long as the evidence will support a satisfactory conclusion as to causation. Twyman v. Roell, 123 Fla. 2, 166 So. 215 (1936). Once the commercial claimant has established causation, the law will tolerate some approximation in the determination of amount. Sampley Enterprises Inc. v. Laurilla, 404 So.2d 841 (Fla. 5th DCA 1981).
The crushing emotional anguish endured by Mrs. Swain is certainly no less real or substantial to her than is the prospect of lost future profits to the businesswoman who is the victim of a commercial tort or a breached contract. Both present substantial problems of quantification. We hold that if Mrs. Swain is able to establish the *174 threshold of increased distress which has been proximately caused by medical negligence, she may not be precluded from seeking damages from the jury. The present record will not allow us to now conclude, as a matter of law, that Mrs. Swain's proof will not attain the bare threshold.
We recognize that the present case presents perplexing issues. On the one hand, Dr. Curry, while adamantly asserting that his care was reasonable, may be quite concerned that a jury of lay people would be inclined to punish him merely for a delayed diagnosis, without regard to actual legal damages flowing therefrom. The trial court will, no doubt, be sensitive to this concern and must guard against its fruition, whether in the presentation of evidence, the argument of counsel, or the instructions to the jury. On the other hand, the court must also be cognizant of Article I, section 21 of the Florida Constitution: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." This provision, dating from our 1838 constitution, was intended to give life and vitality to the maxim: "For every wrong there is a remedy." Holland v. Mayes, 155 Fla. 129, 19 So.2d 709 (1944). Article I, section 21 guarantees to every person the right to free access to the courts on claims of redress of injury free of unreasonable burdens and restrictions. G.B.B. Investments, Inc. v. Hinterkopf, 343 So.2d 899 (Fla. 3d DCA 1977). Judicial construction, in cases where ambiguities exist, should be in favor of, and not in restriction of, access to the courts. Cf., Lehmann v. Cloniger, 294 So.2d 344 (Fla. 1st DCA 1974).
REVERSED and REMANDED.
WOLF and WEBSTER, JJ., concur.
NOTES
[1] The record indicates that mammograms have varying rates of accuracy. A certain percentage of false negatives do occur.
[2] Paragraph 15 of the Swains' Second Amended Complaint reads:

15. The Defendant, CALVIN H. CURRY, M.D., was negligent and breached the prevailing professional standard of care for members of his profession, as defined by Section 766.102, Florida Statutes (1988) by failing to properly diagnose and treat his patient, Mary J. Swain, as aforementioned, and by failing to employ proper and necessary follow-up diagnosis and treatment to confirm that the lump which existed on May 26, 1987, was not the situs of, or a likely development situs for, an occult carcinoma. Dr. Curry was negligent in diagnosing Mrs. Swain's condition in May 1987 as a benign fibrocystic disease based only on the breast examination and a mammogram. Additionally, the Defendant failed to caution Mrs. Swain to perform periodic self-examination and to report any changes in her condition to him.
[3] "Whether the need for finality  and the rule against splitting  should give way in other situations to a rule precluding the recovery of speculative future damages but allowing a separate and later action when such damages become an actuality, we need not here decide. The dimensions of asbestos litigation are so vast, and the potential for inequity so great, that the need for finality  and the rule against splitting  pales in importance." 481 So.2d at 525. The court went on to document the tens of thousands of pending asbestos claims, as well as the long latency periods for asbestos related cancer.
[4] One commentator notes the difficulty in applying the Barron standard to a case of incorrect diagnosis, but suggests that such cases are nonetheless covered by Barron:

The instant decision places a duty on patients to investigate the possible causes of any medical complications that they experience. The statute of limitations for a medical malpractice action commences when patients discover their condition. Therefore, patients, as potential plaintiffs, must determine within two years of discovering any medical complications whether their condition is merely a normal consequence of their medical treatment or an injury caused by their doctor's negligence.
Likewise, a patient's discovery of a negligent act also triggers the limitation period. Thus, patients who suspect possible negligence, such as an incorrect diagnosis or an overdose of x-ray radiation, must determine within two years whether that negligence has injured him or her. Determining possible injury may be difficult for some patients because many injuries do not manifest themselves for several years.
Nancy Freeman, Comment, Limitations of Actions: When Florida's Medical Malpractice Statute of Limitation Begins to Run, 43 U.Fla.L.Rev. 129 (1990).