EMAS, J.
Appellants seek review of a summary final order of dismissal entered by the State of Florida Division of Administrative Hearings (“DOAH”) on a claim for compensation under the Florida Birth-Related Neurological Injury Compensation Plan (“NICA Plan”). In dismissing the claim, the Administrative Law Judge (ALJ) determined that the claim was time-barred, because it was filed more than five years after the birth of the child. The ALJ also reached the issue of “compensability”, determining that the claim was not compen-sable under the NICA Plan. The summary final order of dismissal contained both of these determinations.
Appellants seek review of that portion of the order which determined the claim was not compensable, contending that the ALJ exceeded her jurisdiction by reaching the compensability issue once she determined that the claim was time-barred. For the reasons which follow, we affirm, holding that, despite the untimely nature of Expo-sito’s administrative claim for compensation, the ALJ was vested with exclusive jurisdiction to determine the issue of com-pensability under section 766.304, Florida Statutes (2010).

Background and the Underlying Lawsuit

On July 11, 2005, Yulexi Expósito (“Ex-pósito”) gave birth to twin girls at Jackson Memorial Hospital. The twins were born prematurely, and one of them — baby Stephanie — weighed only 665 grams at birth.[1]
On July 2, 2010, Expósito filed (on behalf of baby Stephanie) a medical malpractice action in circuit court against the University of Miami, the Miami-Dade County Public Health Trust (d/b/a Jackson Memorial Hospital) and several doctors involved in the birth of the twins, alleging their negligence had caused severe and permanent injuries to baby Stephanie.
Appellants moved to dismiss Exposito’s claims on the following grounds:
(1) Baby Stephanie’s “injuries may fall within the purview of the Florida Birth-Related Neurological Injury Compensation Plan (“the Plan”) as set forth in Section 766.301 et seq., Florida Statutes”;
(2) The “issue of whether a claim is compensable under the Plan must be determined exclusively by an administrative law judge in an administrative proceeding, not by a court of general jurisdiction”; and
(3) “If the administrative law judge ultimately determines that the claimant is entitled to compensation under the Plan, the claimant may not thereafter bring or continue a civil action, as such would violate the exclusiveness of remedy provisions of Section 766.303, Florida Statutes.”
On November 22, 2010, in response to the motion to dismiss, Expósito filed with DOAH a petition for benefits pursuant to section 766.301 et seq., Florida Statutes (2010), a statutory scheme known as the “NICA Plan.” In order to place into proper context the administrative petition for benefits and the subsequent administrative proceedings, we first explain the NICA Plan and the relevant statutory provisions.

The NICA Plan and Relevant Statutory Provisions

The NICA Plan was created in 1988 by the Florida Legislature in an effort to “alleviate the high costs of medical malpractice insurance for physicians prac *806 ticing obstetrics.” Bennett v. St. Vincent’s Med. Ctr., 71 So.3d 828, 836 (Fla.2011). The first subsection of this statutory-scheme expresses the legislative intent:
Section 766.301. Legislative findings and intent
(1) The Legislature makes the following findings:
(a) Physicians practicing obstetrics are high-risk medical specialists for whom malpractice insurance premiums are very costly, and recent increases in such premiums have been greater for such physicians than for other physicians.
(b) Any birth other than a normal birth frequently leads to a claim against the attending physician; consequently, such physicians are among the physicians most severely affected by current medical malpractice problems.
(c) Because obstetric services are essential, it is incumbent upon the Legislature to provide a plan designed to result in the stabilization and reduction of malpractice insurance premiums for providers of such services in Florida.
(d) The costs of birth-related neurological injury claims are particularly high and warrant the establishment of a limited system of compensation irrespective of fault. The issue of whether such claim,s are covered by this act must be determined exclusively in an administrative proceeding.
(2) It is the intent of the Legislature to provide compensation, on a no-fault basis, for a limited class of catastrophic injuries that result in unusually high costs for custodial care and rehabilitation. This plan shall apply only to birth-related neurological injuries.
§ 766.301, Fla. Stat. (2010) (emphasis added).
Relevant to our discussion, the statutory scheme includes the following definitions:
“Birth-related neurological injury” means injury to the brain or spinal cord of a live infant weighing at least 2,500 grams for a single gestation or, in the case of a multiple gestation, a live infant weighing at least 2,000 grams at birth caused by oxygen deprivation or mechanical injury occurring in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital, which renders the infant permanently and substantially mentally and physically impaired.
§ 766.302(2), Fla. Stat. (2010) (emphasis added).
“Claimant” means any person who files a claim pursuant to s. 766.305 for compensation for a birth-related neurological injury to an infant. Such a claim may be filed by any legal representative on behalf of an injured infant; and, in the case of a deceased infant, the claim may be filed by an administrator, personal representative, or other legal representative thereof.
§ 766.302(3), Fla. Stat. (2010) (emphasis added).
The NICA plan also provides that if a claim qualifies as a “birth-related neurological injury,” the claimant’s exclusive remedy for compensation is through the NICA administrative process and the claimant is prohibited from seeking any other remedy, including an action in circuit court:
[T]he rights and remedies granted by this plan on account of a birth-related neurological injury shall exclude all other rights and remedies of such infant, her or his personal representative, parents, ... at common law or otherwise, against any person or entity directly involved with the labor, delivery, or immediate postdelivery resuscitation during which such injury occurs.... ”
*807 Section 766.303(2), Fla. Stat. (2010) (emphasis added).[2]
The statutory scheme establishes the nature and extent of the ALJ’s authority over these claims:
The administrative law judge shall hear and determine all claims filed pursuant to ss. 766.301-766.316 and shall exercise the full power and authority granted to her or him in chapter 120, as necessary, to carry out the purposes of such sections.
The administrative law judge has exclusive jurisdiction to determine whether a claim filed under this act is compensa-ble. No civil action may be brought until the determinations under s. 766.309 have been made by the administrative law judge.
If the administrative law judge determines that the claimant is entitled to compensation from the association, or if the claimant accepts an award issued under s. 766.31, no civil action may be brought or continued in violation of the exclusiveness of remedy provisions of s. 766.303.
If it is determined that a claim filed under this act is not compensable, neither the doctrine of collateral estoppel nor res judicata shall prohibit the claimant from pursuing any and all civil remedies available under common law and statutory law.
§ 766.304, Fla. Stat. (2010) (emphasis added).
The Legislature also imposed a time limitation for the filing of an administrative claim for compensation under the NICA Plan:
Any claim for compensation under ss. 766.301-766-316 that is filed more than 5 years after the birth of an infant alleged to have a biHh-related neurological injury shall be barred.
§ 766.313, Fla. Stat. (2010) (emphasis added).
In summary, and for our purposes, the NICA Plan provides that:
1. The ALJ has exclusive jurisdiction to determine the compensability or non-compensability of a claim;
2. No civil action may be brought in court until the ALJ makes a com-pensability determination under the NICA Plan;
3. In order for a claim to be “compen-sable” it must be a “birth-related neurological injury”[3];
4. In order for a claim to be a “birth-related neurological injury,” the infant (in a multiple birth) must weigh at least 2000 grams at birth;
5. If the ALJ determines that the claim is “compensable,” the administrative NICA Plan serves as the exclusive remedy for a claimant seeking compensation, and a claimant may not seek any remedy through a cause of action in court;
6. If the ALJ determines that the claim is “not compensable” under *808 NICA, the claimant may pursue any and all other civil remedies; and
7. A claim for compensation, which alleges that an infant has a “brain-related neurological injury,” is barred if it is filed more than five years of the birth of the infant.

The Petition and the Administrative Proceedings

Although it was clear that a claim under the NICA Plan would not qualify as “com-pensable” (given baby Stephanie’s low birth weight), Expósito filed a petition for benefits pursuant to the statute and in response to appellants’ motion to dismiss which, as discussed earlier, raised the provisions of the NICA Plan and the exclusive jurisdiction of the ALJ to make the statutorily-required determination of compensa-bility.
In her petition for benefits, Expósito expressly acknowledged that baby Stephanie “weighed only 665 grams at the time of her birth so she does not meet the NICA requirement of 2,000 grams for a twin gestation.” Appellants sought to intervene in the DOAH case, asserting they had “a substantial interest in the outcome of the pending Petition” because “if the Administrative Law Judge determines that NICA applies to [Exposito’s] claims ”, appellants “would be entitled to statutory immunity fivm any and all civil claims brought by the Petitioner” and as such, “the civil action against [the defendants] would be dismissed.” The motions for leave to intervene were granted.
Expósito moved the DOAH to enter a summary final order of dismissal, asserting that the ALJ should find her claim was not compensable under section 766.309, because (as Expósito candidly conceded in her petition for benefits) baby Stephanie weighed less than 2,000 grams at birth and thus could not qualify for compensation under the NICA Plan.[4]
The Florida Birth-Related Neurological Injury Compensation Association (“Association”)[5] also moved for a summary final order and asserted Exposito’s claim was not compensable on two grounds: (1) the petition was untimely, as it had been filed more than five years after baby Stephanie’s birth, and therefore, barred by the statute of limitations set forth in the statute; and (2) baby Stephanie weighed less than the 2,000 gram minimum threshold for coverage under the statute.
The University of Miami also filed a motion with the DOAH for a summary final order. It asserted Exposito’s petition was time-barred because it was filed more than five years after baby Stephanie’s birth. However, the University specifically requested that the ALJ not make a determination of the claim’s compensability, because none of the defendants would be “raising any defense as to compensability” in the underlying litigation.[6] Expósito *809 responded that the determination of the claim’s compensability was a threshold issue which should be made before DOAH decided whether the petition was timely filed. More importantly, and as discussed previously, the ALJ’s determination of compensability (or more accurately, a determination of non-compensability) was a condition precedent to Exposito’s ability to maintain her cause of action in circuit court.
The DOAH entered an order determining that although the claim for compensation was untimely and barred by the statute of limitations under section 766.313, because immunity would be a defense to the civil action, the ALJ was required to make a finding as to the claim’s compensa-bility.[7]
The case proceeded at the DOAH level and Expósito filed a renewed motion for summary final order and provided the deposition testimony of Jackson Memorial’s records custodian, who authenticated the newborn admission summary previously attached to Exposito’s motion.
On May 20, 2011, the ALJ issued a summary final order of dismissal. It found that, “as a threshold jurisdictional issue,” Exposito’s claim was indeed barred by the statute of limitations; the ALJ further found that she was nonetheless required to determine whether the claim was otherwise compensable because “Plan immunity may be a viable defense to a civil suit and the ALJ has exclusive jurisdiction to resolve whether the claim is compensa-ble.” The ALJ noted that “there is no dispute that [baby Stephanie] ... never met the threshold statutory weight requirement for either a single or multiple gestation in order to qualify for compensa-bility, and thus, recovery from NICA.” Thus, the ALJ found, the claim was not compensable.
This appeal followed.

Discussion and Analysis

There is no dispute — and never was — that baby Stephanie could not qualify for compensation under the NICA Plan, because she did not suffer a “birth-related neurological injury,” as defined by the NICA statute. This is clear, plainly and simply, because baby Stephanie weighed only 665 grams at birth, less than one-third of the required birth weight to qualify for a claim under the NICA statute.[8]
*810 Nevertheless, the plain language of the statute requires an ALJ to make a determination of compensability (or non-compensability) before a cause of action may be maintained in circuit court. §§ 766.303-04, Fla. Stat. (2010). This necessarily flows from the fact that the Legislature made the NICA Plan the exclusive remedy for all compensable NICA claims. If the ALJ determines a claim is compen-sable, no action may be maintained in circuit court, and the only remedies which may be sought are those administrative remedies provided under the NICA Plan. If the ALJ determines the claim is not compensable, a cause of action may be maintained in circuit court. § 766.304, Fla. Stat. (2010).
Thus the legal issue presented is whether the ALJ was authorized to make a determination of compensability after determining that Exposito’s petition for benefits was untimely filed. We look to the statutes’ plain meaning in order to determine legislative intent. Brass & Singer, P.A. v. United Auto. Ins. Co., 944 So.2d 252, 254 (Fla.2006). Two provisions of the NICA Plan’s statutory scheme serve to guide us in this determination:
First, under section 766.313 “[a]ny claim for compensation under [the NICA statute] that is filed more than 5 years after the birth of an infant alleged to have a birth-related neurological injury shall be barred” (emphasis added). Although Ex-pósito filed a form petition requesting payment of expenses as set forth in section 766.31(a), Expósito never alleged that baby Stephanie had a birth-related neurological injury; in fact, she specifically stated in her petition that baby Stephanie “weighed only 665 grams at the time of her birth so she does not meet the NICA requirement of 2,000 grams for a twin gestation.” Ex-pósito, therefore, did not even meet the definition of a “claimant”[9] under the statute. Expósito was not seeking a determination of compensability so she could pursue her administrative remedies under the NICA Plan; to the contrary, she was seeking a determination of non-compensability so that she could continue to prosecute her previously-filed civil cause of action.
Second, the ALJ is granted “exclusive jurisdiction to determine whether a claim filed under this act is compensable,” and “[n]o civil action may be brought until the [compensability] determinations under s. 766.309 have been made by the administrative law judge.” § 766.304 Fla. Stat. (2010). And “[i]f it is determined that a claim filed under this act is not compensa-ble, neither the doctrine of collateral estop-pel nor res judicata shall prohibit the claimant from pursuing any and all civil remedies available under common law and statutory law.” Id. Thus, Expósito was entitled to pursue or continue her civil cause of action, only if she sought and obtained an ALJ determination that her claim was not compensable.[10]
The Florida Supreme Court provides further guidance in our construction of these statutory provisions:
Because the NICA Plan provides limited remedies as a statutory substitute for common law rights and liabilities, this Court has held that the NICA statute “should be strictly construed to include *811 only those subjects clearly embraced within its terms.”
Bennett v. St. Vincent’s Med. Ctr., 71 So.3d 828, 836 (Fla.2011) (quoting Fla. Birth-Related Neuro. Injury Comp. Ass’n v. Fla. Div. of Admin. Hearings, 686 So.2d 1349, 1354 (Fla.1997)).
The plain language of the applicable statutes evidences that only an administrative law judge is authorized to determine whether a claim is compensable or not compensable. Further, the ALJ’s determination of compensability serves as a threshold issue for any person who wishes to pursue a NICA claim; likewise, the ALJ’s determination of non-compensability is a threshold issue for any person who wishes to pursue a civil action in circuit court.
A claimant who files an untimely NICA claim does so at her own risk. Once the ALJ determines the claim is filed beyond five-year limitations period, the claimant is barred from pursuing a remedy under the NICA Plan. However, the ALJ must nonetheless reach and determine the second issue of compensability in order for the claimant to know whether she may still pursue a civil cause of action.
If the ALJ determines that the claim, though untimely, is otherwise compensa-ble, the claimant is not only prohibited from pursuing the NICA claim (time bar) but would also be prohibited from pursuing a civil action (because a finding of compensability renders a NICA claim the exclusive remedy for the claimant).
However, if the ALJ determines that the claim, though untimely, is not compen-sable, the claimant — though prohibited from pursuing the NICA claim — is free to pursue all other available remedies, including a civil action.
It would require a tortured reading of the NICA Plan to suggest that an untimely claim divests the ALJ of the authority to reach the issue of compensability, because such a construction would deprive a claimant of a determination whether she has the ability to pursue her other civil remedies.
If appellants’ argument is correct, it would mean that Exposito’s failure to timely file a patently unsupportable petition bars her ability to seek relief in a timely-filed medical malpractice action. Such an argument would encourage the filing of futile and frivolous petitions under the NICA statute. More significantly, it would effectively shorten the statute of limitations for medical malpractice actions of this type and create a chilling effect on a plaintiffs right of access to the courts.[11] The Florida Constitution expressly provides: “The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.” Fla. Const. Art. I, § 21. This constitutional provision guarantees to every person the right of free access to the courts on claims seeking redress of injury, *812 free of unreasonable burdens and restrictions. G.B.B. Investments, Inc. v. Hinterkopf, 343 So.2d 899 (Fla. 3d DCA 1977). Any ambiguities in judicial construction of a statute must be resolved in favor of, and not in restriction of, access to the courts. Id. at 901; Swain v. Curry, 595 So.2d 168, 174 (Fla. 1st DCA 1992). We conclude that “the administrative law judge has exclusive jurisdiction to determine whether a claim filed under this act is compensable,” section 766.304, Fla. Stat. (2010), regardless of whether that claim was timely filed.
Affirmed.
RAMIREZ, J., concurs.

. 665 grams is approximately 1.466 pounds.

. Although not applicable to the instant case, the statute does provide an exception to this exclusivity provision:
[A] civil action shall not be foreclosed where there is clear and convincing evidence of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property, provided that such suit is filed prior to and in lieu of payment of an award under ss. 766.301-766.316. Such suit shall be filed before the award of the division becomes conclusive and binding as provided for in s. 766.311.
§ 766.303, Fla. Stat. (2010).

. The ALJ is required to make additional determinations (not relevant to our discussion) in order for a claim to be compensable under the NICA Plan. See § 766.309(l)(a)-(d), Fla. Stat. (2010).

.Attached to Exposito's motion was Jackson Memorial Hospital’s newborn admission summary for baby Stephanie, which plainly stated that she weighed only 665 grams at birth. Although Appellants did not formally stipulate that baby Stephanie weighed only 665 grams at birth — less than one-third of the threshold weight necessary for this infant to qualify for compensation under a NICA claim — neither did Appellants dispute this fact, reflected in the business records of Jackson Memorial Hospital, one of the appellants in this case.

. The Florida Birth-Related Neurological Injury Compensation Association was created by the NICA statute and serves as the administrator of the NICA Plan. §§ 766.302(1), 766.303(1), and 766.315, Fla. Stat. (2010).

. This assertion is disingenuous. First, the University had already raised the issue of compensability in the very motion to dismiss that prompted the filing of the NICA claim. More importantly, the "defense of compensa-bility” is a misnomer. Under the NICA statute, without the ALJ's determination of com- *809 pensability, Expósito would be prohibited from proceeding with her civil cause of action. See § 766.304, Fla. Stat. (2010) ("The administrative law judge has exclusive jurisdiction to determine whether a claim filed under this act is compensable. No civil action may be brought until the determinations under s. 766.309 [which include the determination of compensability] have been made by the administrative law judge.'') (Emphasis added). By requesting the ALJ to determine only that the petition was untimely filed (and to not determine compensability), the University was in effect seeking to extinguish Exposito's ability to pursue her medical malpractice action.

. After moving for rehearing, which was denied, appellants filed a petition for writ of mandamus with this court (Case No. 3D 11-878), seeking to compel the ALJ to dismiss Exposito’s claim or alternatively, a writ of prohibition to "prevent the ALJ from exceeding her jurisdiction by proceeding with the administrative claim and making further determinations notwithstanding the fact that Ex-posito’s claim is time-barred.” The defendants asserted that "the question of whether a claim is barred by Section 766.313 Florida Statutes is a threshold jurisdictional issue, [and thus,] the ALJ lacked the jurisdiction to make any determinations beyond that ruling and that any additional determination rendered would amount to an improper advisory opinion." This court denied appellants' requested relief.

. This likely explains why Expósito did not file a petition for benefits under the NICA Plan before filing her malpractice claim in circuit court.

. "Claimant” means “any person who files a claim pursuant to s. 766.305 for compensation for a birth-related neurological injury to an infant." § 766.302(3) Fla. Stat. (2010) (emphasis added).

. Presumably, the parties in interest could enter into a stipulation that a claim is not compensable, thereby rendering unnecessary the futile act of filing an administrative petition for a claim that all parties recognize could never qualify as compensable under the NICA Plan.

. The five-year statute of limitations under the NICA Plan is shorter than the statute of limitations for medical malpractice claims arising out of the birth or delivery of a child, which may be as long as eight years. § 95.1 l(4)(b), Fla. Stat. (2010). Furthermore, the Legislature expressly provided in § 95.1 l(4)(b) that the limitations period "shall not apply to actions for which ss. 766.301-766.316 provide the exclusive remedy.” By this language the Legislature made plain its intent to apply the five-year statute of limitations to compensable NICA claims (i.e., those claims for which NICA provides the exclusive remedy). As to those claims for which NICA is not the exclusive remedy (i.e., non-compensable claims such as Exposito's) the Legislature intended the limitations period of § 95.11 (4)(b) to apply. Appellants' argument, however, would result in application of a five-year limitations period to both com-pensable and non-compensable claims.